22 F.Supp.2d 275 (1998)
Kenneth SMITH, Plaintiff,
v.
MONTEFIORE MEDICAL CENTER-HEALTH SERVICES DIVISION; New York City Department of Correction; Deputy Warden of Programs Manzi; John Doe 1 (Asbestos Coordinator); John Doe 2 (Doctor-Physician Assistant) and Jane Doe, Defendants.
THE CITY OF NEW YORK s/h/a the New York City Department of Correction, Third-Party Plaintiffs,
v.
DAKAR CONSTRUCTION CORPORATION and Dakar Developers Inc., Third-Party Defendants,
DAKAR DEVELOPERS INC., Fourth-Party Plaintiff,
v.
A.L. EASTMOND & SONS INC. d/b/a Ale, Inc., D & S Restoration, Inc. and Reliance National Insurance Company of New York, Fourth-Party Defendants.
No. 94 Civ. 7645(SAS).
United States District Court, S.D. New York.
October 14, 1998.
*276 Kenneth Smith, pro se.
Christopher Reo, Asst. Corp. Counsel, Corp. Counsel of City of New York, New York, NY, for Municipal Defendants.
Marc Pillinger, Smith Mazure Director Wilkins, Young Yagerman & Tarallo, P.C., New York, NY, for D&S Defendants.

OPINION & ORDER
SCHEINDLIN, District Judge.
Plaintiff, proceeding pro se, brings this action under 42 U.S.C. § 1983 against Montefiore Medical Center, the City of New York,[1] and Deputy Warden Angelo Manzi (the "municipal defendants") alleging, inter alia, that he was denied medical care while he was in the custody of the New York City Department of Correction. See Amended Complaint, ¶ IV(3)-(5). Thereafter, the municipal defendants instituted a third-party action against Dakar Developers Inc. seeking contractual indemnification. Dakar Developers Inc. then brought a fourth-party action for breach of contract against A.L. Eastmond & Sons, Inc., Reliance National Insurance Company of New York, and D & S Restoration, Inc. (collectively "D & S").
By Order of Magistrate Judge James C. Francis dated June 5, 1997, defendants were granted permission to move for summary judgment. The municipal defendants and D & S moved on the ground that there is no evidence that plaintiff suffered from a serious medical condition as the result of his alleged exposure to asbestos. For the following reasons, summary judgment is granted in defendants' favor and plaintiff's complaint is hereby dismissed.

I. The Facts

A. Plaintiff's Claims
In May 1994, plaintiff was arrested and charged with second-degree robbery. See Deposition of Kenneth Smith ("Smith Dep."), p. 53, annexed as Exhibit C to the Declaration of Christopher Reo, attorney for the municipal defendants, sworn to June 19, 1998 ("Reo Decl."). He was taken into the custody *277 of the New York City Department of Correction ("NYCDOC") on May 10, 1994. Smith Dep., p. 9. On August 12, 1994, while housed in the George Motchan Detention Center ("GMDC"),[2] plaintiff alleges that a corridor ceiling covering collapsed causing him to be showered with debris, dust, rocks and insulation material. Id., pp. 56, 107, 111.
Plaintiff alleges that the debris and dust entered his mouth, eyes, nose, and covered his body. Id., pp. 95, 111, 115, 119. Plaintiff claims he was trapped in the hallway between 30 and 45 seconds and breathed 15 to 20 times before someone inside the prison law library opened the door and allowed him to enter. Id., pp. 115, 117, 124-25. Plaintiff states that he rinsed the material from his mouth, eyes and nose at a sink in the law library. Id., pp. 122-24. The material, according to plaintiff, was later discovered to be asbestos.[3]See Amended Complaint, ¶ IV. After the incident, plaintiff allegedly began having trouble breathing, his eyes reddened and teared, and his nose was clogged and runny. Smith Dep., pp. 130-31; 205-08.
Plaintiff states that he signed up for sick call on the day of the exposure but was not called to the prison's Montefiore Medical Clinic until August 15, 1994, three days later. Amended Complaint, ¶ IV(4). Plaintiff asserts that he repeatedly asked to go to emergency sick call over the weekend. Id. In response to these requests, plaintiff was allegedly told by Montefiore staff that asbestos exposure was not an emergency. Id.
Plaintiff also claims that Deputy Warden Manzi was of no assistance in securing medical assistance. When confronted with plaintiff's exposure, Warden Manzi allegedly responded: "What are you wooried [sic] about it for? It'll be twenty to thirty years before that kind of asbestoes [sic] will make you sick!" Id., ¶ IV(3). In a declaration sworn to September 15, 1998 ("Manzi Decl.") (a copy of which is attached as Exhibit A to the Reply Declaration of Christopher Reo, attorney for the municipal defendants, sworn to September 17, 1998), Deputy Warden Manzi states that he is "not aware of any instance in which an inmate at G.M.D.C. informed [him] that he had been exposed to asbestos." Manzi Decl., ¶ 3. Furthermore, Deputy Warden Manzi refutes plaintiff's contention that he observed plaintiff in clothing covered with a white dusty substance which he had reason to know was asbestos. Id., ¶ 4. Although Deputy Warden Manzi has no recollection of plaintiff's alleged request for medical attention on August 12, 1994, he states that it is his practice and procedure to assist inmates in obtaining medical attention. Id., ¶ 5. Accordingly, Deputy Warden Manzi denies plaintiff's allegation that he directed personnel at the GMDC prison health clinic to neither treat nor record plaintiff's alleged exposure to asbestos. Id., ¶ 6. Once again, for the purposes of this motion, I will accept Smith's allegations at true.
Plaintiff went to the Montefiore Medical Clinic on August 15, 1994 and complained that he was coughing and had difficulty breathing, and that his eyes were irritated. Smith Dep., pp. 207-08. He was given cough medication and eye solution for his symptoms. Amended Complaint, ¶ IV(5). He was also sent for x-rays and sputum tests. Id. According to plaintiff, on subsequent sick call appearances he was refused treatment by Montefiore staff who allegedly stated that "it was institutional policy not to deal any longer with the individuals reporting to sick-call for treatment of asbestoes [sic] exposure." Id.
Plaintiff claims that as a result of the August 12 incident, he suffers from nasal *278 congestion, shortness of breath, pain in his rib cage, and dizziness. Smith Dep., p. 226. He also claims to suffer from the following progressively degenerating maladies: respiratory infections, pleuritis, asthma, acute bronchitis, conjunctivitis, rhinitis, and inflammatory disease of the paranasal sinuses. See Affidavit of Kenneth Smith, sworn to August 6, 1998 ("Smith Aff."), ¶ 1(a). He also claims that a pre-existing hearing condition worsened due to the alleged asbestos exposure. Finally, plaintiff avers that he suffers emotional and mental anguish as well as a fear of developing asbestos-related illness in the future. Id., ¶ 1(c).

B. Plaintiff's Medical Records
While incarcerated by the NYCDOC, plaintiff was housed at the GMDC and the Otis Bantum Correctional Center ("OBCC"). While at the GMDC, plaintiff admits that he was treated at the Montefiore Medical Clinic 5 to 10 times for his asbestos complaints. Smith Dep., p. 224. At the OBCC, plaintiff went to the clinic approximately 10 to 15 times for respiratory and other problems and saw more than 20 health professionals while he was there. Id., pp. 237-38. Plaintiff was evaluated by medical personnel upon transfer from the GMDC to the OBCC. However, this evaluation does not indicate that plaintiff complained of asbestos exposure or that he suffered from any respiratory condition. See Reo Decl., Exh. L (November 11, 1994 OBCC Intake History and Physical Examination form). Similarly, plaintiff's December 28, 1994 admission record into Bellevue Hospital for treatment for unrelated injuries does not mention exposure to asbestos or indicate that plaintiff suffered from any respiratory conditions at that time. See Reo Decl., Exh. M.
In March 1995, plaintiff was transferred from the NYCDOC to the New York State Department of Correctional Services ("NYSDOCS"). Upon transfer, plaintiff was examined and interviewed by medical professionals. At that time, plaintiff did not complain, nor do his medical records indicate, that he was exposed to asbestos or suffered from any respiratory condition. See Reo Decl., Exh. N (March 16, 1995 NYSDOCS Medical Pre-Screening Form). While incarcerated by the NYSDOCS, plaintiff was admitted to the Erie County Medical Center ("ECMC") for treatment for unrelated injuries. Upon admission, plaintiff's medical history and physical condition were reviewed by medical professionals and an anesthesiologist. Again, there are no complaints of exposure to asbestos or respiratory problems. See Reo Decl., Exh. O (June 16, 1996 Anesthesia Evaluation Form).

C. Reports of Medical Experts
In addition to the absence of asbestos-related complaints in plaintiff's medical records, several of defendants' medical experts examined plaintiff and reviewed his medical records. Each expert concluded, with a reasonable degree of medical certainty, that plaintiff suffers from no condition associated with asbestos exposure.
Doctor Lester B. Mayers is a board certified physician specializing in pulmonary diseases and internal medicine. See Affidavit of Doctor Lester B. Mayers, sworn to June 11, 1998 ("Mayers Aff."), ¶ 1 (a copy of which is annexed as Exhibit I to the Reo Declaration). Doctor Mayers examined plaintiff and reviewed his medical records. Mayers Aff., ¶ 4. Dr. Mayers noted that although plaintiff's medical records indicate that "he repeated[ly] visited the prison clinic and was examined extensively during the course of his incarceration, none of those examinations revealed evidence of any asbestos related illness." Id., ¶ 10. Dr. Mayers concluded that plaintiff does not suffer from any physical disorder related to the alleged instance of asbestos exposure. Id., ¶ 11. Moreover, he found "no medical or physical objective findings to establish any asbestos related disease or condition." Id. According to Dr. Mayers, exposure to asbestos for less than one minute is insufficient to cause an increased risk of any asbestos related illness. Id., ¶ 8. Finally, Dr. Mayers concluded that a single exposure to asbestos does not lead to asbestos related disease. Id., ¶ 11.
In a Supplemental Affidavit ("Mayers Supp. Aff.") (a copy of which is annexed as Exhibit A to the Reply Affidavit of Marc H. Pillinger, attorney for fourth-party defendants), *279 Dr. Mayers addressed several allegations made by plaintiff in his opposition to the instant motion. In particular, Dr. Mayers refuted plaintiff's contention that his alleged diagnosis of bronchitis and asthma proves that he sustained asbestos-related illness. According to Dr. Mayers, neither bronchitis nor asthma are asbestos-related symptoms. Mayers Supp. Aff., ¶ 5. In addition, Dr. Mayers also rejected the following as "objective" findings of asbestos-related disease: a hemangioma, expiratory wheeze and sinus congestion, inflammatory disease in the paranasal sinuses, and pseudo tumor cerebri. Id., at ¶ 6. Dr. Mayers stated that these findings are not asbestos-related and that there is nothing in plaintiff's medical records to even remotely indicate a causal connection. Id.
Plaintiff was also examined by Doctor Ralph A. Olson, a physician board certified in neurological surgery. See Affidavit of Doctor Ralph A. Olson, sworn to June 11, 1998, ("Olson Aff."), ¶¶ 1, 2 (a copy of which is annexed as Exhibit J to the Reo Declaration). His examination revealed that plaintiff does not suffer from any neurological disorder or deficit as a result of his alleged exposure to asbestos. Olson Aff., ¶ 6. In addition, Dr. Olson's review of plaintiff's medical records also indicated that plaintiff did not suffer from any asbestos-related neurological condition. Id., ¶ 5.
Finally, plaintiff was examined by Malcolm H. Schvey, a board certified otolaryngologist. See Affidavit of Malcolm H. Schvey, sworn to June 15, 1998 ("Schvey Aff."), ¶ 1 (a copy of which is attached as Exhibit K to the Reo Declaration). Doctor Schvey examined plaintiff's ears, nose and throat, his medical records and the audiological report of Dr. Lawrence Deutsch. Schvey Aff., ¶¶ 5, 13. Dr. Schvey found plaintiff's ears, mouth, palate, hypopharynx, larynx and neck to be normal but that he suffered from allergic rhinitis in his nose. Id., ¶ 6. Dr. Schvey concluded, with a reasonable degree of medical certainty, that the rhinitis was caused by an allergic reaction, does not affect plaintiff's hearing, and was not causally related to any alleged exposure to asbestos. Id., ¶ 12. After performing several objective and subjective test to ascertain plaintiff's audiological abilities, Dr. Schvey concluded that plaintiff can hear speech at normal levels. Id. In reaching this conclusion, Dr. Schvey noted that asbestos is not an ototoxic material, meaning that it does not cause hearing loss. Id., ¶ 4. According to Dr. Schvey, plaintiff has no appreciable hearing loss in either ear but has been well coached in feigning such loss. Id., ¶ 7.

II. Discussion

A. The Legal Standard
A motion for summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). However, the moving party is not required to affirmatively disprove unsupported assertions made by the nonmoving party. See Celotex, 477 U.S. at 323, 106 S.Ct. 2548.
If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); see also Liberty Lobby, 477 U.S. at 248, 106 S.Ct. 2505 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). If there is any evidence in the record from which a reasonable inference could be drawn *280 in favor of the nonmoving party on a material issue of fact, summary judgment is improper. See Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 33 (2d Cir.1997).
Finally, although the same standards for summary judgment apply when a pro se litigant is involved, the pro se litigant "should be given special latitude in responding to a summary judgment motion." Gonzalez v. Long, 889 F.Supp. 639, 642 (E.D.N.Y.1995); see also Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir.1988) ("special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment"). Thus, a pro se litigant's complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

B. Plaintiff's Deliberate Indifference Claim
Plaintiff was a pre-trial detainee rather than a convicted prisoner at the time of the alleged incident. Therefore, the standards of the Fourteenth Amendment, not the Eighth amendment, apply to his claim of inadequate medical care. Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir.1991) (citations omitted). Nonetheless, the "Second Circuit applies the same standards to deliberate indifference claims under both the Fourteenth Amendment's due process protections and the Eighth Amendment's cruel and unusual punishment protections." Sassower v. City of White Plains, 89 Civ. 1267, 1995 WL 222206, at *9, n. 14 (S.D.N.Y. April 13, 1995) (citing Johnson v. Glick, 481 F.2d 1028, 1032 (2d Cir.1973)). See also City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (a plaintiff's due process rights under the Fourteenth Amendment are "at least as great as the Eighth Amendment protections available to a convicted prisoner."); Montavon v. Town of Southington, 95 Civ. 1141, 1997 WL 835053,*4 (D.Conn. Sept. 29, 1997) ("Although the Supreme Court has not articulated the duties of a custodial official under the Due Process Clause to provide medical care to a pretrial detainee, it is clear that the detainee's rights are as great as those afforded to a convicted prisoner under the Eighth Amendment"). Accordingly, plaintiff's denial of medical care claim will be analyzed under Eighth Amendment case law.
"Claims of deliberate indifference to serious medical needs are tested under a two-pronged standard requiring sufficient proof of both a serious medical need [objective component] and deliberate indifference to that need [subjective component]." Sassower, 1995 WL 222206, at *8 (citing Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). A serious medical need is one that contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, 37 F.3d at 66 (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting)).[4] The "seriousness of a medical need may also be determined by reference to the effect of denying or delaying medical treatment." Sassower, 1995 WL 222206, at *8. However, "[m]ere delay in the rendering of medical treatment in and of itself does not rise to the level of a constitutional violation ... To demonstrate a constitutional violation, a plaintiff must show that he sustained substantial harm because of the delay in the rendering of medical treatment." Burtton v. Gritter, 95 Civ. 504, 1995 WL 729312, at *4 (N.D.Ind. Nov. 17, 1995) (citations omitted).
With regard to the subjective component, the "charged prison officials must have acted with a sufficiently culpable state of mind by being deliberately indifferent to the health or safety of an inmate." King v. Department of Correction, 95 Civ. 3057, 1998 WL 67669, at *5 (S.D.N.Y. February 18, 1998) (citing Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 *281 (1994)). Deliberate indifference to serious medical needs exists only when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837, 114 S.Ct. 1970. Deliberate indifference may also be manifested by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (footnotes omitted). Negligence, however, does not suffice to establish a constitutional violation. Daniels v. Williams, 474 U.S. 327, 333, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Moreover, the Eighth Amendment is only violated by deliberate indifference to medical needs if those needs are serious. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) ("society does not expect that prisoners will have unqualified access to health care").
Here, plaintiff does not allege facts sufficient to rise to the level of a constitutional violation. Although it is beyond dispute that he was forced to wait three days before he received medical attention, there is nothing in the record to suggest that this delay affected the course of treatment plaintiff would have otherwise received. Basically, plaintiff went to the clinic with cold-like symptoms for which he was given cough syrup and eye solution. Hence, his immediate medical needs were not sufficiently serious to invoke the protections of the Eighth Amendment. Simply put, there is not much that can be done immediately for exposure to asbestos. Thus, although plaintiff may face the risk of developing asbestos-related illnesses in the future, his medical needs at the time of exposure and shortly thereafter were not serious.
Plaintiff's reliance on Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), does little to further his cause. In Helling, an inmate sued prison officials for jeopardizing his health by assigning him to a cell with another inmate who smoked 5 packs of cigarettes a day. Id. at 28, 113 S.Ct. 2475. The Supreme Court rejected the notion that the harm had to be immediate:
We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year.
Id. The Court thus held that the inmate stated a cause of action under the Eighth Amendment by alleging that the prison officials "have, with deliberate indifference, exposed him to levels of [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health." Id. at 35, 113 S.Ct. 2475 (emphasis added).
Here the problem is that the defendants were not deliberately indifferent to plaintiff's medical needs. Given the lack of any treatment for exposure to asbestos, it cannot be said that defendants disregarded an unreasonable risk to plaintiff's health by delaying his access to medical treatment for three days. Moreover, the latency between the exposure and any physical injury belies the notion that the defendants were aware of a substantial risk of serious harm from delaying treatment and consciously ignored that risk. At most, defendants may have been negligent in subjecting plaintiff to a three-day delay but this does not rise to the level of a constitutional violation. See Hendricks v. Coughlin, 942 F.2d 109, 113 (2d Cir.1991) (citing Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Accordingly, plaintiff's claim of deliberate indifference to his medical needs claim must be dismissed.

C. Plaintiff's Failure to Warn Claim
In Seymour/Jones v. Bricker, 90 Civ. 7757, 1990 WL 223171, at *1 (E.D.Pa. December 18, 1990), an inmate sued prison officials for deliberately failing to warn him of certain remedial asbestos work being performed at the prison. In analyzing the claim, the court stated: "The only possible constitutional claim that is therefore available to [plaintiff] is that the asbestos work and the defendants' failure to warn him created conditions of confinement that constituted cruel and unusual *282 punishment under the Eighth Amendment." Id.
The Supreme Court has held that prisoners claiming that conditions of confinement constitute cruel and unusual punishment are required to show deliberate indifference on the part of prison officials. Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). In addition, for a "claim based on a failure to prevent harm, an inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm." Doyle v. Coombe, 976 F.Supp. 183, 186 (W.D.N.Y. 1997) (citing Farmer, 511 U.S. at 834, 114 S.Ct. 1970), aff'd, 1998 WL 537066 (2d Cir. 1998).
Here, again, plaintiff's claim must fail because there is nothing in the record that could support a finding of deliberate indifference on the part of the defendants. Assuming plaintiff's allegations to be true, warning signs were posted three days after the alleged incident. As the Supreme Court has stated: "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause ..." Whitley v. Albers, 475 U.S. at 319, 106 S.Ct. 1078. The fact that warning signs were not posted earlier does not reveal deliberate indifference; at most, it represents negligent conduct. As defendants could not have possibly foreseen the circumstances of plaintiff's alleged exposure, they lacked the culpable state of mind necessary for a constitutional violation.[5] As the Supreme Court noted, "if a prison boiler malfunctions accidentally during a cold winter, an inmate would have no basis for an Eighth Amendment claim, even if he suffers objectively significant harm." Wilson, 501 U.S. at 300, 111 S.Ct. 2321. Accordingly, plaintiff's failure to warn claim must also be dismissed.[6]
Plaintiff's failure to warn claim must also fail for an additional reason, namely the lack of evidence of a municipal policy or custom. It is well established that a municipality may not be held liable under 42 U.S.C. § 1983 on a respondeat superior basis. See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, a municipality may only be held liable under § 1983 for the unconstitutional actions of its employees if those acts were the result of a municipal policy, practice or custom. Id. at 690-91, 98 S.Ct. 2018. A "policy, practice or custom" may include a formal policy endorsed by the municipality or a failure by policy makers to train or supervise subordinates. City of Canton v. Harris, 489 U.S. 378, 386-88, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The plaintiff must show that the municipality was the "moving force" behind plaintiff's injury. Monell, 436 U.S. at 692, 98 S.Ct. 2018; Board of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). That is, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of civil rights." Brown, 117 S.Ct. at 1388.
Here, plaintiff offers no proof of a policy of failing to warn inmates of asbestos work on the part of the City of New York. Rather, he alleges one single injurious event from which he asserts that the City of New York, in conspiracy with its contractors, negligently failed to warn him. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it *283 was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). But see Javid v. Scott, 913 F.Supp. 223, 230 (S.D.N.Y.1996) (noting that in Turpin v. Mailet, 619 F.2d 196 (2d Cir.1980), the Second Circuit held that a single incident of alleged constitutional violation may support a claim against a municipality).[7] In any event, bare allegations of such a policy or custom, without any supporting evidence, do not constitute such proof. See Dwares v. New York, 985 F.2d 94, 100 (2d Cir.1993) ("The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support ... such an inference."). Accordingly, plaintiff's failure to warn claim must be dismissed. See King, 1998 WL 67669, at *3.

D. Plaintiff's Conspiracy Claim
Plaintiff alleges that medical professionals, as well as defendant Manzi, conspired to conceal the effects of his asbestos exposure by preventing transcription of any discussion of plaintiff's alleged exposure to asbestos. For such a conspiracy to exist, it would have to involve health care providers employed by the Montefiore Medical Center, Bellevue Hospital, Erie County Medical Center and the New York State Department of Correction. However, beside conclusory allegations, plaintiff offers no evidence of such a widespread conspiracy. Plaintiff's completely unsubstantiated allegations of conspiracy are insufficient to defeat defendants' motion for summary judgment. See San Filippo v. U.S. Trust Co. Of New York, Inc., 737 F.2d 246, 256 (2d Cir.1984) (plaintiff's unsubstantiated allegations were insufficient to state a valid § 1983 claim); see also Hameed v. S. Pundt, 964 F.Supp. 836, 839 (S.D.N.Y.1997) ("conclusory, vague and general allegations are insufficient to establish that defendants conspired to violate [an inmate's] constitutional rights"). Accordingly, plaintiff's conspiracy claim must also be dismissed.

III. Conclusion
For the reasons set forth above, summary judgment is granted in favor of defendants and plaintiff's complaint is hereby dismissed. The Clerk of the Court is directed to close this case.
NOTES
[1] I previously directed that the City of New York be substituted for defendant New York City Department of Correction.
[2] Also known as the C-73 Correctional Facility.
[3] There is considerable controversy as to whether plaintiff was exposed to asbestos at all. Plaintiff alleges that hazardous material warning signs were placed in the area on August 15, 1994 and that following his exposure, he notified two law library coordinators who indicated to him that they were similarly exposed. See Amended Complaint, ¶ IV(2), (3). On the other hand, there is the Affidavit of Bogdan Joldzic, president of D & S Restoration, sworn to May 29, 1998 ("Joldzic Aff.") (included as Exhibit O to the Affidavit in Support of Motion, sworn to by Marc H. Pillinger, attorney for fourth-party defendants). In that Affidavit, Mr. Joldzic states that on August 12, 1994, his company was not doing any asbestos abatement work in the corridor leading to the law library. Joldzic Aff., ¶ 3. Viewing the evidence in favor of the nonmovant, it will be assumed for purposes of this motion that plaintiff was in fact exposed to asbestos on August 12, 1994.
[4] Conditions which have been held to meet the constitutional standard of serious medical need include a brain tumor, broken pins in a hip, premature return to prison after surgery, diabetes requiring a special diet, a bleeding ulcer, and loss of an ear. Nance v. Kelly, 912 F.2d at 607 (citations omitted). Conditions that have been held to fall short of the constitutional standard include a mild concussion and broken jaw, a kidney stone, cold symptoms, headaches, a broken finger, a toothache, and "bowel problems." Id. at 607-08.
[5] Courts in the Eastern District of Pennsylvania have routinely held that "mere exposure to asbestos in prison, and a prison official's failure to warn about the presence of asbestos, is insufficient as a matter of law to establish a constitutional violation." Robinson v. Vaughn, 91 Civ. 7646, 1992 WL 368461, at *2 (E.D.Pa. December 2, 1992). See also Alim v. Vaughn, 91 Civ. 4348, 1992 WL 209918 (E.D.Pa. August 19, 1992); Seymour/Jones v. Bricker, 90 Civ. 7757, 1990 WL 223171 (E.D.Pa. December 18, 1990).
[6] Plaintiff's reliance on New York Labor Law § 904 is misplaced. Assuming a private cause of action against a landowner were permitted under that statute, any failure to warn claim would be grounded in state law, not federal. As this Court declines to exercise supplemental jurisdiction, such claims would have to be brought in state court.
[7] In Turpin, the circuit court held that "a single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference or `gross negligence' on the part of officials in charge." 619 F.2d at 202.