**Clyde D. TYLER**

v.

**Thomas C. RAPONE.**

**Civ. A. No. 83–0366.**

United States District Court,
E.D. Pennsylvania.

Feb. 14, 1985.

RICO provision or what constitutes a sufficient injury to invoke the treble damages provision of the statute.

Clyde D. Tyler, pro se.

Matthew S. Donaldson, Jr., Media, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is defendant's motion for summary judgment in an action brought by a prisoner under 42 U.S.C. § 1983. For the reasons stated herein, defendant's motion will be granted.

## I. FACTS

Plaintiff was arrested in early 1982 and charged with rape, involuntary deviate sexual intercourse, indecent assault, terroristic threats, unlawful restraint, and possession of the instruments of crime. On February 23, 1982, he was committed to Delaware County Prison in Pennsylvania where the defendant was warden. Plaintiff failed to make bail of $75,000.00 and remained incarcerated pending trial. Plaintiff was held in

maximum security status because his bail was in excess of $50,000.00, he had a record of violent crimes, and as an inmate at the state correctional institution at Graterford, he had previously stabbed two inmates.

Plaintiff's maximum security status was the result of a determination by the county prison officials. Plaintiff was given no notice nor opportunity to be heard prior to the determination.

On March 31, 1983, plaintiff was again convicted of rape, involuntary deviate sexual intercourse, and indecent assault. He was committed to the state correctional institution at Graterford.

Plaintiff brought this action *pro se* under 42 U.S.C. § 1983 against the warden. The court construes his complaint as setting forth three theories of recovery: (1) incarceration in administrative segregation without giving him prior notice and an opportunity to be heard violates his due process interest of liberty; (2) his First Amendment right to free exercise of religion was violated because prison officials did not permit him to attend group worship services held for members of the general prison population; and (3) the prison's failure to provide him with prompt medical care for a toothache and a cut constituted a violation of his due process rights.

## II. DISCUSSION

(A) *The Administrative Segregation Issue*

In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the United States Supreme Court construed Pennsylvania's regulations pertaining to state correctional institutions. *See* 37 Pa.Admin. Code §§ 95.103–95.104 (Shepard's 1979).[1]

---

**1.** Title 37 Pa.Admin.Code § 95.103, until repealed in February, 1984, provided in pertinent part:

  (d) The procedure for handling misconducts shall be as follows:

  (1) The inmate shall be informed in writing of the charge and given a specific date for a hearing which shall be held not less than 24

hours after receipt of this notice but within six days.

  (2) The inmate shall be permitted assistance in presenting his case from either any staff member or any inmate in general population status, provided that such staff member or inmate is willing to serve in such an advisory capacity.

These regulations required, in explicit and mandatory language, that when officials of state correctional institutions determine a prisoner's administrative status, they must give the prisoner notice and an opportunity to be heard. The Court held that prisoners incarcerated in state correctional institutions had a liberty interest in remaining with the general prison population. The liberty interest arose from the regulation's "repeated use of explicitly mandatory language in connection with requiring substantive predicates...." *Hewitt*, 459 U.S. at 472, 103 S.Ct. at 871. The Court conceded, however, that, absent a state-created interest, a prisoner has no protected liberty interest in remaining in the general prison population. *Hewitt*, 459 U.S. at 472, 103 S.Ct. at 871.

■ Plaintiff argues that *Hewitt* is controlling in this case. The court finds, however, that the regulations construed in *Hewitt* involved state correctional institutions. Another group of regulations govern county correctional institutions such as the Delaware County Prison. *See* Pa.Admin.Code §§ 95.221–95.248 (Shepard's 1979).[2] Comparing the two regulations,

(3) The inmate shall be permitted to meet with the person he chooses for an appropriate length of time before the hearing.

(4) The inmate shall be permitted to call witnesses at the hearing. They shall be regulated by the Chairman of the Hearing Committee based on their relevance to the case. No inmate can be forced to be a witness against his will.

(e) The Hearing Committee shall conduct the hearing as follows:

(1) The charge and alleged facts in support of the charge shall be read and fully explained by the Chairman. The staff member writing the Misconduct Report may be present if he wishes and may call witnesses to support his claim; however, in cases of factual conflict, when the Hearing Committee deems it necessary to resolve the dispute, they shall compel the staff member's presence and may continue the hearing until he can be present.

(2) The inmate shall be permitted to admit or deny the charges and to give his version which shall be recorded on the misconduct form by a member of the Hearing Committee.

(3) The inmate may present information available to him and to others, with help from whomever he has chosen to assist him.

(4) The Committee members may interrogate the person making the report, the inmate, and others as necessary.

(5) The inmate may question the staff member charging him, if the staff member is present, and other witnesses against him. The extent of the questioning shall be controlled by the Chairman of the Hearing Committee as considerations of relevancy, security, and other valid considerations dictate....

37 Pa.Admin.Code § 95.103(d) & (e) (Shepard's 1979).

2. Title 37 Pa.Code §§ 95.225 and 95.226 provide, in pertinent part:

§ 95.225

(a) Generally. Every jail in the Commonwealth should use a classification process to coordinate all information about the prisoner so that decisions concerning security, housing, and treatment programs may be made on a basis of knowledge instead of guess. Classification may be an uncomplicated or a very complex process depending upon the size, physical facilities, and staff of the jail. The purpose of classification is to help the jail administrator as follows:

(1) Assure the security of the jail.

(2) Assure the welfare of the inmates.

(3) Assure the protection of the community by preventing escapes.

(4) Assure the most effective use of the jail, within its limitations, as an instrument of correction and rehabilitation.

(b) Minimum requirements. The minimum requirements as regards classification of prisoners in county jails are as follows:

. . . . .

(3) If possible, each prisoner should appear before the classification committee to discuss his or her case and future life goals.

(4) Each prisoner should be informed of the decision and the reason for the decision of the classification committee.

(5) Classification is an on-going process and a procedure for reclassification shall be developed and each prisoner shall be informed under what conditions reclassification is possible.

§ 95.226

(a) Generally. The immediate problem of housing the new prisoner shall be solved when he enters the jail. Some housing arrangements are required by Pennsylvania law. Few jails have a formal procedure for evaluating new inmates. However, an immediate decision shall be made as to which housing unit he is to be assigned. The housing assignment of a prisoner may have serious consequences for him and for the jail. For example, a violent prisoner may be placed in a double cell with a weaker and older person whom he may assault. Or the youthful prisoner may be placed in a cell with an aggressive homosexual and be raped. The jail ad-

the court finds that the explicit and mandatory language present in the regulations governing state correctional institutions is not present in regulations governing county correctional institutions. Since the mandatory language is absent, the court holds that the regulations pertaining to county prisons do not create a liberty interest in prisoners incarcerated in county prisons. As a result, county prisoners have no state-created liberty interest in remaining in the general population and no expectancy that they will be accorded notice and an opportunity to be heard when their administrative status is determined. Therefore, the court holds that plaintiff had no due process rights to notice or a hearing when the defendant determined plaintiff's status. *Accord Doss v. Rapone*, 601 F.Supp. 935 (E.D.Pa.1985) (Luongo, J.); *Garfield v. Rapone*, No. 82–2345 (E.D.Pa., May 25, 1984) (Broderick, J.); *Green v. Rapone*, No. 83–2932 (E.D.Pa. February 16, 1984) (O'Neill, J.). Defendant's motion for summary judgment will be granted with respect to plaintiff's administrative segregation claim.

### (B) *Free Exercise of Religion Claim*

Next, the court examines plaintiff's claim that defendant violated plaintiff's First Amendment right to practice his religion by not permitting plaintiff to attend religious services with the general prison population.

■ Prison authorities must provide prisoner with the reasonable opportunity for the exercise of his religious tenets in a form that is substantially warranted by the requirements of prison safety and order. *Sweet v. South Carolina Dept. of Corrections*, 529 F.2d 854, 863 (4th Cir.1975). A prisoner's right to attend worship may be restricted, however, if the restriction is reasonably justified. *St. Claire v. Cuyler*, 634 F.2d 109 (3d Cir.1980).

ministration shall carefully assess the need for segregating prisoners who should be segregated and assure that the housing arrangements required by law are followed, and that all prisoners are handled according to good jail management standards.
(b) Minimum requirements. The minimum requirements for housing are as follows:

■ Plaintiff was given an opportunity to attend a Christian Bible Study, and religious counseling was made available to him. Plaintiff's right to attend religious services, however, was restricted by prison officials because plaintiff had a history of violent criminal acts, had stabbed two inmates at Graterford prison while serving a sentence for a prior conviction, and had participated in at least one fight at Delaware County Prison. Therefore, in light of plaintiff's record of violent acts, the court holds that the restraint on plaintiff's right to attend worship services with the general prison population was reasonably justified in order to maintain prison security. Accordingly, defendant's motion for summary judgment will be granted with respect to plaintiff's exercise of religion claim.

### (C) *The Medical Care Claim*

In his final claim, plaintiff asserts that his right to due process was violated by the failure of defendant to provide him with prompt medical care. Specifically, the plaintiff alleges that: (1) the prison did not provide him with dental care until two weeks after he complained of a toothache; and (2) treatment of a cut, which plaintiff obtained in a fight with another inmate, was not prompt.

■ In order to recover the plaintiff must allege deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Inmates of Allegheny County Jail*, 612 F.2d 754, 762 (3d Cir. 1979).

■ Plaintiff concedes that the care provided to him was adequate. Plaintiff does not allege in his pleadings or in his deposition that his condition was serious and, in fact, plaintiff indicated in his deposition

. . . . .

(iii) Prisoners considered to be habitual criminals shall be segregated.
37 Pa.Admin.Code §§ 95.225–95.226 (Shepard's 1979).

that his condition was never serious. Also, plaintiff does not allege that defendant was deliberately indifferent to plaintiff's medical needs. The plaintiff merely claims that prison officials were slow to provide medical and dental care while the plaintiff suffered from minor medical conditions. Accordingly, the court holds that the defendant was not deliberately indifferent to any serious medical needs of the plaintiff.

### III. CONCLUSION

After consideration of all the pleadings and the deposition of plaintiff, the court holds that no genuine issue of material fact exists and that defendant is entitled to judgment as a matter of law.

An appropriate Order will be entered.