**Francisco VELOZ, Plaintiff,**

v.

**The State of NEW YORK and Philip Organ, D.P.M., Vasser Brothers Hospital, Defendants.**

**No. 98 Civ. 0567(RWS).**

United States District Court, S.D. New York.

Jan. 21, 1999.

Francisco Veloz, Stormville, NY, pro se.

Honorable Eliot L. Spitzer, Attorney General, New York City (Michael O. Hueston, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Philip J. Organ, M.D. ("Dr.Organ"), a physician at Green Haven Correctional Facility ("Green Haven"), and the State of New York (together, "Defendants"), two of the defendants in this action, have moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment and to dismiss the complaint of *pro se* plaintiff Francisco

Veloz ("Veloz"). For the reasons set forth below, the motion is granted.

### Prior Proceedings

Veloz filed his complaint in this action on January 27, 1998, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated the Eighth Amendment of the Constitution by performing an operation on his foot that has caused him to have problems walking, pain, and cramping.

The instant motion, having been filed by Dr. Organ and the State of New York on October 8, 1998, and opposed by Veloz, was marked fully submitted on November 4, 1998.

### Facts

#### I. Veloz's Claims

According to the complaint, in November 1988, Veloz's wife severely injured his left foot in a domestic dispute. Now, however, Veloz insists that there was no domestic dispute and that at the time of the incident resulting in the injury to his foot he was attempting to save the life of his daughter. Veloz claims that this injury remained dormant until 1996, whereupon he sought medical treatment from Green Haven medical personnel and was referred to Dr. Organ, who works as an adjunct physician at the facility's Podiatry Clinic. Veloz asserts that as a result of medical treatment, namely an operation he received from Defendants, his constitutional rights were violated.

Specifically, Veloz submits that (1) his October 10, 1996 surgical visit was canceled for unknown reasons but does not allege that Dr. Organ was in any way responsible for the rescheduling of his operation; (2) the surgery performed by Dr. Organ on February 21, 1997, resulting in a screw being placed on his left great toe, was performed in an unanticipated area of his left foot; (3) Dr. Organ did not prescribe a wheel chair for him, crutches, or a cane after the February 21, 1997 operation; (4) Dr. Organ refused his request to remove the screw from his foot after Veloz complained of pain and instead gave him medication to relieve the pain that made him momentarily dizzy; (5) throughout the course of his recovery, Dr. Organ gave Veloz pain medication that caused the dizzi-

ness and squeezing in his chest; and (6) his August 12, 1997 operation to remove the screw was rescheduled to October 3, 1997.

#### II. Veloz's Course of Treatment

On May 21, 1996, Veloz was seen in the Podiatry Clinic of Green Haven for a complaint of pain in his left hallux, i.e., great toe. He was reevaluated on June 4, 1996. At the examinations, Veloz described a history of pain in his left great toe due to a crush injury that he had sustained approximately eight years earlier. He stated that he had trouble sleeping prone because in that position his left great toe pressed against the mattress, causing pain.

On examination, it was determined that the pain was localized in the left great toe. A diagnosis was made of a fracture fragment, bone cyst, and degenerative arthritis in the joint area of the toe. Surgery was discussed and agreed to by Veloz. The surgical plan called for removal of the fracture fragment, curettage of the cyst, and because the damaged articular surface, fusion of the hallux interphalangeal joint.

On February 21, 1997, Veloz was admitted to Vassar Brothers Hospital and with his consent the fragment and cyst were removed from the left great toe. Additionally, the joint of the toe was found to be eroded, and thus it was fused. According to Veloz, because he did not have his eye glasses, he could not see the details of the consent form. Veloz claims that he did not expect the toe to be operated on, just the foot. Pathologic reports showed bone demonstrating periosteal fibrosis (a degenerative bone condition). Veloz was seen postoperatively four days later when his wounds were redressed. He was instructed to be ambulatory so as to avoid postoperative stiffness and atrophy of disuse. As a result, no wheel chair or crutches were prescribed. Furthermore, it was felt that being ambulatory would improve his outlook and assist in diminishing postoperative pain more quickly.

A request was made for Veloz to come to the Medical Clinic approximately one week later, at which time the staff was to change the dressing. Veloz was then seen by Dr.

Organ on March 11, 1997, approximately eighteen days after the operation. The wound was inspected and found to be dry and clean, and a tape splint was applied to the toe in order to aid the fusion process of the surgery site.

Veloz was again seen on March 25, 1997. The wound was dry and closed, the fusion site was intact, and although he had some pain along one of his tendons,. he had no swelling or redness in the area. Veloz was referred to physical therapy, which was to be administered twice a week by Green Haven medical staff. Radiographs taken on that day showed the fracture line across the surgical site, but there was no evidence of motion of the bone, and it was clear that fusion had taken.

Veloz was then seen on April 8, 1997, for a redressing. He had no pain in the operative site, but complained that there was pressure from his sneaker overlying the bunion area. In the belief that the sneaker was too tight, Dr. Organ removed the sock lining from the sneaker so as to allow for more room.

Thereafter, according to Veloz's medical reports, he stubbed his left great toe on June 3, 1997. Veloz, however, contends that the incident occurred on June 6, 1997. Veloz described the injury as resulting from kicking the concrete base of the toilet, tearing his left great toe open and causing bleeding and severe pain. Veloz was seen for this problem by Green Haven medical staff on June 13, 1997. Dr. Organ was not informed of this injury and did not take part in the treatment Veloz received. On July 1, 1997, Dr. Organ saw Veloz in the Podiatry Clinic where Veloz complained of pain in the entire foot, day and night. He stated that this pain began at the end of February 1997, corresponding to the time of his arthrodesis surgery. On examination Dr. Organ concluded that there was no pain in the area where the surgery had been performed and the wound was healed. There was minimal scar tissue over the skin of the toe. The toe was a bit swollen and red but well in keeping with his status post surgery. Dr. Organ treated Veloz's left foot by injection therapy.

It was Dr. Organ's opinion that the pain Veloz reported was due to the limitation of motion at the metatarsophalangeal joint, compensated at the hallux interphalangeal joint. Dr. Organ also opined that this pain could have been aggravated or even induced by the injury inflicted on Veloz when he stubbed his toe in June 1997. Moreover, according to Veloz's medical records, at the visit of July 1, 1997, Veloz made no reference to the stubbing injury that he had sustained.

It was Dr. Organ's opinion that the use of local injection therapy would reduce pain and improve the range of motion of the first metatarsophalangeal joint. Veloz was then scheduled to return one week later and, in Dr. Organ's absence, receive an injection from another clinic podiatrist. Veloz was then to return two weeks later to see Dr. Organ for more injections.

Veloz's return to Dr. Organ was on July 29, 1997, when he was evaluated for pain and irritation at the tip of the left great toe due to the screw that had been placed in the toe. At that time consideration was made as to removing the screw under local anesthesia at Vassar Brothers Hospital. In addition, Veloz's toe was examined to determine its movement capability. He still had pain in the left first metatarsophalangeal joint and guarded against movement of the toe. Veloz was treated with injection therapy.

Moreover, Veloz complained of pain across the medial aspect of the ankle joint. On examination, Dr. Organ found that there was no swelling or crackling sound on range of motion in the ankle or tarsal joints. However, there was fibrous thickening apparent on palpation of the joint, and Dr. Organ treated it with injection therapy.

Finally, at that visit Veloz was evaluated for pain in the joint of his left foot. He had pain and cramping in his left foot, but no swelling, redness, or bony proliferation. An MRI was ordered to be conducted by physicians referred to Veloz by Green Haven medical personnel. Dr. Organ's plan was to follow with ankle arthroscopy if necessary, and he continued to treat Veloz with pain reliever.

Veloz was next seen on September 9, 1997. At that time, he complained of having joint pain in the left ankle and left first metatarso-

phalangeal joint. Dr. Organ decided to have the screw removed. Dr. Organ's impression was that the irritation could be causing him to walk in an antalgic manner to avoid aggravating the rest of his foot. However, it did not appear that there was any specific problem at the tip of the hallux.

Dr. Organ further postulated that if after screw removal, Veloz continued to complain of pain in the ankle, the requested MRI would be used to evaluate the ankle and subtalar joints. If the problem was secondary to synovitis and superficial ankle joint erosion, it was Dr. Organ's opinion that an arthroscopic surgery would be justified. If the damage was more extensive, a single, double, or triple surgical fixation of the joint might be needed to control his pain. Veloz was referred to further physical therapy for degenerative arthritis of the left foot to be conducted by Green Haven medical staff, and Dr. Organ administered injection therapy.

On October 3, 1997, the screw was removed from the left hallux under local anesthesia. Veloz was instructed to remain ambulatory postoperatively. Thus no wheel chair or crutches were prescribed. On November 18, 1997, Veloz again told Dr. Organ of the pain in his left foot. Veloz indicated the area of the tarsometatarsal joints as the focus of this pain. Veloz's medical records indicate a crush injury to the left hallux approximately eight years earlier, but the treatment Dr. Organ provided appeared to resolve that problem.

On examination, Dr. Organ found pain on palpation and motion of the interlarsal joints of Veloz's left foot. However, there was no redness or swelling present. Dr. Organ's impression was that Veloz was developing degenerative arthritis, and he treated Veloz with injection therapy and recommended that the Green Haven medical department provide Veloz with physical therapy twice a week and a better shoe and sneaker with a built-in-arch support.

Finally, Green Haven medical personnel presented Veloz to Dr. Organ's clinic on December 30, 1997. Veloz contests the date and proclaims that he was last seen by Dr. Organ on December 16, 1997. At that time, Veloz reported that the pain across the in-

step of his foot was relieved for about one hour after the last injection, but that he experienced chest pain after the injection. Veloz said he had a similar chest pain incident after an IVP injection sometime earlier. He never reported these incidents to Dr. Organ in person. Based on this, the decision was made to hold off the injections. He was still awaiting the dispensing of special shoes by Green Haven medical personnel. Dr. Organ has not treated him since this last visit.

### Discussion

#### I. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Silver v. City University, 947 F.2d 1021, 1022 (2d Cir.1991).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir.1988). If there is any evidence in the record regarding the issues on which summary judgment is sought from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. See Knowles v. New York City Dept. of Corrections, 904 F.Supp. 217, 220 (S.D.N.Y.1995).

A party seeking to defeat a summary judgment motion cannot "rely on mere speculation or conjecture as to the true nature of facts to overcome the motion." Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir.1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir.1986)). Rather, the re-

sponding party "must show the existence of a disputed material fact in light of the substantive law." *Peer Int'l Corp. v. Luna Records, Inc.,* 887 F.Supp. 560, 564 (S.D.N.Y.1995). In the absence of any disputed material fact, summary judgment is appropriate.

Materiality is defined by the governing substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of factual issues— where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985).

For a dispute to be genuine, there must be more than "metaphysical doubt." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. "If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). Since this standard mirrors that for a directed verdict, *see id.* at 250, 106 S.Ct. 2505, the ultimate question on this motion is whether a reasonable jury could find for the nonmoving party, or whether the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## II. The Eleventh Amendment Bars the Claims Against the State of New York

■ Veloz seeks damages in this suit from the State of New York. However, absent waiver or consent—and neither exist in this case—the Eleventh Amendment bars a suit in federal court against a state.

■ The Eleventh Amendment to the United States Constitution states: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State." Indeed, the Supreme Court has interpreted the Eleventh Amendment as barring suits by citizens against their own states. *See Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 237–40, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Welch v. Texas Department of Highways and Public Transportation,* 483 U.S. 468, 472, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Furthermore, the provisions of § 1983 were not intended to override a state's immunity. *See Dube v. State University of N.Y.,* 900 F.2d 587, 594 (2d Cir.1990) (citing *Quern v. Jordan,* 440 U.S. 332, 340–42, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)).

Accordingly, Veloz's claim against the State of New York must be dismissed.

## III. Summary Judgment Is Granted in Favor of Defendants Because There Exists No Issue of Material Fact as to Whether Dr. Organ Violated Veloz's Right Under the Eighth Amendment

"To state a viable § 1983 claim, plaintiff must show that officials were acting under color of state law and their actions deprived the plaintiff of a right guaranteed by the constitution or laws of the United States."[1] *Bryant v. Maffucci,* 923 F.2d 979, 982 (1991); *see Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). According to Veloz, his Eighth Amendment right to adequate medical treatment was violated by Dr. Organ.

---

1. Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

A plaintiff may state an Eighth Amendment claim when he alleges that prison officials denied, delayed, or interfered with necessary medical treatment with deliberate indifference. *See Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). However,

> only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment claim.... Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious.

*Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quotations and citations omitted).

Additionally, it is only that conduct which is incompatible with "the evolving standards of decency that mark the progress of a maturing society," *Estelle,* 429 U.S. at 102, 97 S.Ct. 285, or constitute the "unnecessary and wanton infliction of pain," *id.* at 104, 97 S.Ct. 285, that rises to the level of deliberate indifference toward an inmate's serious medical needs.

There is a two-pronged test that a plaintiff must satisfy to state a cognizable claim under the Eighth Amendment. The test contains both an objective and a subjective component. First, as to the objective prong, the medical condition for which the plaintiff alleges he was denied treatment must be "sufficiently serious" to raise Eighth Amendment concerns. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). Ordinarily, a health condition is sufficiently serious to state a claim when it involves some urgency, risk of degeneration or death, or extreme pain. *See id.* Moreover, as noted above, a "sufficiently serious" deprivation occurs when a "prison official's acts or omission ... result[s] in the denial of 'the minimal civilized measure' of life's necessities." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

Second, as to the subjective prong, the plaintiff must allege that the charged official acted with a "sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66 (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). This requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* at 297, 111 S.Ct. 2321 (internal quotation marks, emphasis, and citations omitted). The "sufficiently culpable" state of mind in an Eighth Amendment claim against a prison official is one of "deliberate indifference" to an inmate's health or safety. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson,* 501 U.S. at 302–03, 111 S.Ct. 2321).

Deliberate indifference "requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway,* 37 F.3d at 66. More specifically, a prison official is not "deliberately indifferent" unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. Thus, there must be allegations that the official was aware of facts from which he or she should have recognized the existence of such a risk. *See Hathaway,* 37 F.3d at 66.

> For instance, this element is properly pleaded by allegations of "intentional efforts on the part of [prison officials] to delay [plaintiff's] access to medical care at a time when [ ] he was in extreme pain[,]" and has made his medical problems known "to the attendant prison personnel[,]" or "complete denial" of medical treatment, or of a "reckless or callous indifference to the ... safety of ... prisoners."

*Harding v. Kuhlmann,* 588 F.Supp. 1315, 1316 (S.D.N.Y.1984) (footnotes omitted) (alteration in original), *aff'd,* 762 F.2d 990 (2d Cir.1985).

In short, in order to avoid dismissal, a plaintiff must allege conduct that " 'shocks the conscience.' " *Kopec,* 767 F.Supp. at 465 (quoting *Williams v. Vincent,* 508 F.2d 541, 544 (2d Cir.1974)).

Here, Veloz has not provided any facts against Dr. Organ that would satisfy

either component of the deliberate indifference test. Veloz's medical situation was not "sufficiently serious" under the Eighth Amendment, and the facts fail to demonstrate that Dr. Organ disregarded an excessive risk to Veloz's health in his manner of treatment.

In *Estelle*, 429 U.S. at 104 n. 10, 97 S.Ct. 285, the Supreme Court illustrated the types of conditions that would qualify as serious medical needs by citing examples from several circuit court decisions: for example, loss of an ear, *Williams v. Vincent*, 508 F.2d 541 (2d Cir.1974), or refusal of a doctor to treat an allergic reaction after the injection of penicillin despite his knowledge that the inmate was allergic to the drug, *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir.1974). *See also Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338, (1989) (brain tumor); *Hathaway*, 37 F.3d at 66 (delay in removing broken pins from hip for over two years and nearly fifty complaints of pain). Conversely, conditions that have failed to satisfy the constitutional "serious medical need" standard include a kidney stone, *Hutchinson v. United States*, 838 F.2d 390, 393–94 (9th Cir.1988), a refusal to provide "high performance" footwear to an inmate with chronic ankle arthritis, *Alston v. Howard*, 925 F.Supp. 1034, 1040 (S.D.N.Y.1996), a failure to prescribe orthopedic shoes and dressing feet too tightly after bunion surgery, *Cole v. Scully*, No. 93 Civ.2066 (LAP), 1995 WL 231250, at *6 (S.D.N.Y. Apr.18, 1995), a toothache, *Tyler v. Rapone*, 603 F.Supp. 268, 271–72 (E.D.Pa. 1985), and a broken finger, *Rodriguez v. Joyce*, 693 F.Supp. 1250, 1252–53 (D.Me. 1988).

In this action, Veloz's foot condition did not constitute a "serious medical need." Granted, Veloz suffers from pain in his foot, pain that according to Veloz has increased subsequent to the operation and treatment of his foot by Dr. Organ. However, Veloz's condition was not "one of urgency that may produce death, degeneration, or extreme pain," *Hathaway*, 37 F.3d at 66, and was, in comparison, far less serious than the types of conditions the other cases illustrate qualify as serious medical needs.

As for the subjective prong, Veloz does not allege that Dr. Organ acted with a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 298, 111 S.Ct. 2321. Veloz submits that his October 10, 1996, surgical visit was canceled for unknown reasons. He also asserts that his August 12, 1997 operation to remove the screw in his foot was rescheduled to October 3, 1997. Any delay alleged does not support a claim of deliberate indifference without an allegation that Dr. Organ was aware of a serious risk to Veloz's health that he chose to ignore. *See Peterson v. Scully*, 707 F.Supp. 759, 761 (S.D.N.Y.1989); *see also Hathaway*, 37 F.3d at 66, *Harding*, 588 F.Supp. at 1316. Here, Veloz does not allege that Dr. Organ was in any way responsible for either rescheduling or that the rescheduling caused serious medical needs to go untreated.

Veloz additionally suggests that the surgery performed by Dr. Organ on February 21, 1997, was performed in an area of his left foot that he had not expected would be operated on. This is not akin to an allegation that a doctor operated on the wrong foot. After all, the great toe is part and parcel of the foot. Veloz's proclamation that he could not see the details of his consent form because he failed to wear his eye glasses does little to invoke the sufficient culpability on the part of Dr. Organ to satisfy the deliberate indifference inquiry.

As with the claim regarding operation of the great toe as opposed to another area of the foot, the remaining of Veloz's complaints as to the care he received from Dr. Organ amount to a difference of opinion as to the correct course of treatment. For instance, Veloz implores that Dr. Organ did not prescribe him with a wheel chair, crutches, or cane after the operation. However, according to Dr. Organ, Veloz was to be ambulatory after the surgery so as to avoid the stiffness and atrophy of disuse. Veloz, moreover, urges that the screw in his left great toe should have been removed earlier and that rather than abide by his request, Dr. Organ gave him medication to relieve the pain which caused momentary dizziness and squeezing in the chest. Still, Veloz admits that he did not refuse the medication or injections because he did not want to suggest to Dr. Organ that he did not want to feel better.

These complaints, at most, allege negligence and are insufficient as a matter of law to state a claim under § 1983. It is well settled that allegations of "mere negligence in the treatment of a prisoner's physical condition, or claims based on differences of opinion over matters of medical judgment, fail to rise to the level of a § 1983 violation." *Corby v. Conboy,* 457 F.2d 251, 254 (2d Cir.1972); *see Alston,* 925 F.Supp. at 1040 (S.D.N.Y. 1996) (finding that plaintiff's disagreement as to the appropriate course of treatment does not create a constitutional claim); *Peterson,* 707 F.Supp. at 761 ("It is established that claims of inadequate medical treatment which reflect a mere disagreement with prison authorities over proper medical treatment do not state a claim of constitutional magnitude" (citation omitted)). In the context of an Eighth Amendment claim of inadequate medical care, a negligent or otherwise incorrect medical judgment, such as a medical decision not to order additional diagnostic techniques or forms of treatment, does not amount to cruel and unusual punishment.

As the Supreme Court wrote in *Estelle:* "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106, 97 S.Ct. 285; *see also Hathaway,* 37 F.3d at 66 ("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm."); *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) (explaining that deliberate indifference in a malpractice claim requires culpable recklessness, *i.e.,* an act or a failure to act by the prison doctor that evinces "a conscious disregard of a substantial risk of serious harm"); *Bryant,* 923 F.2d at 982 ("An allegation of a wrong perhaps sufficient to state a remediable tort cause of action under state law does not automatically rise to the level of constitutional deprivation simply because a defendant is the state or agent of the state.").

As indicated above, Veloz's claims amount at most to a question of medical treatment. Veloz has failed to present any evidence to show that Dr. Organ possessed the requisite state of mind to be liable under the deliberate indifference test. Indeed, none of the facts disputed by Veloz are material to the determination of whether both prongs of the deliberate indifference test have been satisfied. Accordingly, Veloz has failed to raise an issue of fact as to Dr. Organ's liability for a constitutional violation.

### Conclusion

For the reasons set forth above, summary judgment is granted in favor of the State of New York and Dr. Organ.

It is so ordered.