**Ronald DAVIDSON, Plaintiff,**

v.

**Charles SCULLY, et al., Defendant.**

**Ronald Davidson, Plaintiff,**

v.

**Thomas Coughlin, III,
et al., Defendant.**

**Nos. 81 CIV. 0390 PKL,
83 CIV. 2405 PKL.**

United States District Court,
S.D. New York.

Aug. 22, 2001.

Kevin J. Curnin, Esq., Stroock & Stroock & Lavan LLP, New York City, for the Plaintiff.

Michael B. Siller, Esq., Assistant Attorney General, State of New York, New York City, for the Defendants.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff, Ronald Davidson, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment right to adequate medical care while incarcerated by the New York State Department of Correctional Services ("DOCS"). The named defendants are: Thomas Coughlin, former Commissioner of DOCS; Charles Scully, Superintendent of Green Haven Correctional Facility ("Green Haven"); Dean Riley, Deputy Superintendent of Security at Green Haven; E. Michael Kalonick, Health Services Administrator at Green Haven; Dr. Marc Freedman, Facilities Health Services Director at Green Haven; Wayne Strack, Lieutenant at Green Haven; Dennis Thomson, Sergeant at Green Haven; Angelo Senisi, Senior Counselor at Green Haven; and Gerald Gallagher, Assistant Superintendent of Industries at Green Haven.

Plaintiff's actions allege a continuous and ongoing failure by defendants to provide him with adequate medical care for four distinct medical conditions. Plaintiff alleges that defendants have: i) failed to treat his foot problems by failing to provide him with access to a podiatrist and orthopedic footwear; ii) refused to treat his allergies by denying him allergy shots, denying him access to an allergist, ceasing to provide his allergy medication, and denying him housing in a smoke-free environment; iii) failed to treat his tinnitus by denying him ear plugs, specific medications, a masking device, participation in a sleep study, and housing in quieter sections of the correctional facilities; and iv) denied him treatment of his vision problems by denying him, at various times, contact lenses, the use of eye lubricants, access to monitoring of his contact lens use, and correctly ground lenses for his eyeglasses.

Plaintiff originally brought these actions *pro se*, pursuant to 42 U.S.C. § 1983, in the early 1980s, alleging violations of his Eighth Amendment right to adequate medical treatment during his incarceration at Green Haven. Plaintiff amended his 81 Civ. 0390 complaint in 1990 to add Thomas Coughlin, the DOCS Commissioner at the time, as a defendant. After retaining *pro bono* counsel in 1996, plaintiff filed a Supplemental Amended Complaint to update his claims to include events that took place after his transfer to Auburn Correctional Facility. In *Davidson v. Coughlin*, 914 F.Supp. 1011, 1015 (S.D.N.Y.1996), the Court denied plaintiff's motion for a preliminary injunction regarding the claims underlying these actions, holding that plaintiff could not demonstrate a likelihood of success on the merits regarding the seriousness of his medical concerns. In May 2001, the Court granted in part plaintiff's motion for leave to submit additional evidence in further opposition to defendants' motion for summary judgment, *see Davidson v. Coughlin*, 148 F.Supp.2d 249 (S.D.N.Y.2001) [hereinafter, *"Davidson II"*], and plaintiff submitted evidence regarding his medical treatment since his incarceration at Elmira Correctional Facility. On August 2, 2001, the Court denied plaintiff's request for permission to submit

more supplemental evidence.[1] Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants now move for summary judgment. Defendants' motion is granted in its entirety.[2]

## DISCUSSION

### I. Summary Judgement Standard

A moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Holt v. KMI–

Continental Inc., 95 F.3d 123, 128 (2d Cir.1996). When considering a motion for summary judgment, the Court's responsibility is not "to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir.1986). In determining whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Holt, 95 F.3d at 129.

The moving party bears the burden of demonstrating that no genuine issue of material fact exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Gallo v. Pru-

---

1. Plaintiff himself made this request in an ex parte letter to the Court, dated July 28, 2001 and received by the Court on August 1, 2001, in which plaintiff also complained about his pro bono counsel's representation of him. "This practice of 'litigation by letter,' although common, is an insufficient means of seeking relief from a court." Peart v. City of New York, 992 F.2d 458, 463 (2d Cir.1993), citing In Re Drexel Burnham Lambert Group, Inc., 138 B.R. 687, 692 n. 6 (Bankr.S.D.N.Y. 1992) ("Litigation by Letter," although a pervasive practice in the Southern District, "has been repeatedly criticized and condemned by the ... judges in this district" because it "contributes to the confusion and overload of an already burdened system.") (Emphasis added). In the Court's August 2, 2001 Order, the Court directed plaintiff to provide defense counsel with a copy of the July 28, 2001 ex parte letter as well as any future ex parte communications. Plaintiff's attorneys subsequently provided defense counsel with copies of the July 28 letter as well as another ex parte letter sent by plaintiff on August 2, 2001 in which he requested, among other things, that the Court order DOCS to provide tape recordings of all of plaintiff's phone calls with his attorneys in order to substantiate his complaints about his pro bono counsel. On August 16, 2001, the Court received another letter from plaintiff himself in which he objected to being ordered to provide defense

counsel with copies of his ex parte communication and asked the Court to strike those letters. In his letters, plaintiff attempted to introduce additional factual contentions into the record, asked the Court to expand the scope of the action to allow additional evidence, and asked the Court to order DOCS to take certain actions. It was appropriate for defense counsel to receive copies of such correspondence and to have the opportunity to respond to plaintiff's requests. The Court has found such responses helpful. Plaintiff's request to strike such correspondence is therefore denied.

2. Because the Court found that plaintiff failed to show that a material issue of fact exists on plaintiff's claims that his Eight Amendment rights were violated, the Court need not address defendants' claims of immunity from liability for or lack of personal involvement in the alleged constitutional violations. See Cuoco v. Moritsugu, 222 F.3d 99, 2000 WL 1041227, at *8 (2d Cir.2000). The Court considered defendants' qualified immunity defense for one claim, that plaintiff's exposure to second-hand smoke violated his right to be free from cruel and unusual punishment, because this claim was previously adjudicated on the basis of qualified immunity with regard to his claim at another prison. See Davidson v. Kelly, 141 F.3d 1151, 1998 WL 88131, at *4 (2d Cir.1998).

*dential Residential Servs. L.P.*, 22 F.3d 1219, 1223–24 (2d Cir.1994). "[T]he movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). Once the moving party discharges his burden of demonstrating that no genuine issue of material fact exists, the burden shifts to the nonmoving party to offer specific evidence showing that a genuine issue for trial exists. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Continental Group*, 859 F.2d 1108, 1114 (2d Cir.1988) (quoting *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505).

## II. *Plaintiff's Eighth Amendment Claims*

■ In order to establish an Eighth Amendment claim for inadequate medical care, a prisoner must prove "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998). To satisfy this standard, the prisoner must satisfy both a subjective and an objective prong.

■ First, the alleged medical need must be, in objective terms, "sufficiently serious." *Chance*, 143 F.3d at 702. A condition is "sufficiently serious" under the Eighth Amendment if it is "a condition of urgency that may result in degeneration or extreme pain." *Id.* (internal quotes omitted). Medical needs that have been

deemed to be sufficiently serious by the Second Circuit include: an untreated tooth cavity, *see Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir.2000); chronic tooth pain lasting six months, rendering prisoner unable to chew and resulting in tooth degeneration, *see Chance*, 143 F.3d at 702; a ruptured Achilles tendon, *see Hemmings v. Gorczyk*, 134 F.3d 104, 107 (2d Cir. 1998); deprivation of "prescribed eyeglasses to avoid double vision and the loss of depth perception," *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir.1996); and delay in removing broken hip pins from a prisoner's hip for more than two years, *see Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

■ Second, to satisfy the subjective prong, the defendant must act with "a sufficiently culpable state of mind" that amounts to "deliberate indifference" to the serious medical need. *Hathaway*, 37 F.3d at 67. A "prison official does not act in a deliberately indifferent manner unless that official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 66. "[D]eliberate indifference entails something more than mere negligence," *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106, 97 S.Ct. 285. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.*

### A. *Plaintiff's Podiatric Condition*

Plaintiff alleges that he has "bilateral Tailor's bunions," which cause him extreme pain. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgement [hereinafter, "Pl's Mem"] at 3. Dr. Lawrence Kobak, who

examined plaintiff on January 9, 1998, concluded that plaintiff does suffer from "bilateral Tailor's bunions," and that while "the level of pain one person experiences is subjective," he believes plaintiff's pedal problems "could lead to the type of pain a patient might characterize as 'acute' or 'extremely painful.'" Declaration of Dr. Lawrence Kobak, sworn to on April 22, 1999 [hereinafter, "Kobak Dec."] at ¶ 6. Dr. Kobak further stated that plaintiff "exhibited signs of suffering from extreme pain" when Dr. Kobak palpated the affected areas of plaintiff's feet. *Id.* at ¶ 5.

While some courts have held that foot pain is not sufficient to constitute a serious medical need, *see McKinnis v. Williams,* 2001 WL 873078, at *4 (S.D.N.Y. Aug.1, 2001); *Veloz v. New York,* 35 F.Supp.2d 305, 311–12 (S.D.N.Y.1999); *Cole v. Scully,* 1995 WL 231250, at *5 (S.D.N.Y. Apr.18, 1995), other courts have held that foot pain is sufficiently serious. *See Ruffin v. Deperio,* 97 F.Supp.2d 346, 351 (W.D.N.Y. 2000); *Wandell v. Koenigsmann,* 2000 WL 1036030, at *3 (S.D.N.Y. July 27, 2000) (assuming, without deciding, that ankle injury is sufficiently serious). Here, the Court must "view the evidence in the light most favorable to the non-moving party." *American Casualty Co. of Reading Pennsylvania v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994). Therefore, the Court will assume for the purposes of this motion that plaintiff's podiatric condition could constitute a "serious medical need."

■ However, even if plaintiff's podiatric condition is a serious medical need, a reasonable jury could not find that defendants were deliberately indifferent to that need. In fact, plaintiff was examined and treated for his podiatric problems on numerous occasions by DOCS medical personnel[3] as well as by outside orthopedic doctors to whom plaintiff was referred by DOCS.[4] These examinations by and consultations with medical personnel have resulted in extensive treatment for plaintiff's podiatric problems. Plaintiff has been treated for pain with analgesics, such as Tylenol and Naprosyn, *see* Graceffo Aff. at ¶ 18, and plaintiff admits that he has been prescribed orthopedic shoes several times "by physicians and podiatrists at Attica, Auburn, Great Meadow, and Green Haven prisons." Pl's Supp.Dec. at ¶ 13. In fact, plaintiff concedes that he received orthopedic shoes on November 17, 1993, and again in 1998, *see* Declaration of Ronald Davidson, sworn to on April 21, 1999 [hereinafter "Pl's Dec."] at ¶ 23[k], and plaintiff's medical records reflect that he received orthopedic shoes on January 11, 1982, May 21, 1985, and March 26, 1992, and that he received orthotic supports on January 15, 1987. *See* Affirmation of Robert Lewin,

---

3. Plaintiff's consultations with DOCS medical personnel regarding his podiatric problems include: a consultation at DOCS's Walsh Clinic on May 23, 1995, *see* Affidavit of Dr. Anthony Graceffo, sworn to on March 4, 1998 [hereinafter, "Graceffo Aff."] at ¶ 17; an examination by Nurse Fowler on June 9, 1999, *see* Plaintiff's Supplemental Declaration, sworn to on February 12, 2001 [hereinafter, "Pl's Supp.Dec."] at ¶ 6, 7; and an examination by Dr. Hatef on August 23, 1999, *see* Pl's Supp.Dec. at ¶ 8–15; *see also* Affidavit of Dr. Joseph Hatef, sworn to on June 8, 2001 [hereinafter, "Hatef Aff."] at Ex.A.

4. Plaintiff's consultations with outside doctors regarding his podiatric problems include: consultations with outside orthopedic doctors, upon referral by Dr. Graceffo, on July 22, 1994, August 22, 1994, December 12, 1994, and May 22, 1995, *see* Affidavit of Dr. Anthony Graceffo, sworn to on May 26, 1995 [hereinafter "Graceffo Aff. II"] at ¶ 73–74; Graceffo Aff. at ¶ 17; an examination by Dr. Kaempffe, an orthopedic surgeon, on October 8, 1999, *see* Pl's Supp.Dec. at ¶ 16–18; and a consultation with Dr. Kaempffe on June 2, 2000, *see* Affidavit of Michael B. Siller, Esq., sworn to on July 2, 2001 [hereinafter, "Siller Aff."] at Ex.E.

Esq., sworn to on April 30, 1999 [hereinafter, "Lewin Aff."] at ¶ 2[c], [k], [o], [t] and accompanying exhibits.

Plaintiff does not deny that he has been seen many times for his podiatric problems and that he has been treated for these problems; rather, plaintiff alleges that DOCS did not properly treat him because DOCS denied him particular orthopedic shoes, orthotics, and surgery, which he claims are necessary to treat his podiatric problems. *See, e.g.,* Pl's Mem at 5; Pl's Supp.Dec. at ¶ 6, 7 (Nurse Fowler issued arch supports after examining plaintiff on June 9, 1999, but plaintiff now complains because she did not prescribe prescription footwear); Pl's Supp.Dec. at ¶ 17 (Dr. Kaempffe told plaintiff that it was his policy was to prescribe footwear rather than surgery to treat bilateral Tailor's Bunions); Pl's Supp.Dec. at ¶ 6, 13–14 and Siller Aff. at Exs. E and F (Plaintiff received special boots in summer of 2000 pursuant to prescription for "summer weight wide toe box boots," but plaintiff now complains because the boots are "Sequoia" brand boots rather than the type of boot he would prefer, even though a particular type of boot not prescribed). Plaintiff's allegations regarding the treatment he has received for his podiatric problems simply amount to complaints about the type of treatment he believes he should receive. However, it "is well established that mere disagreement over . . . proper treatment does not create a constitutional claim." *Chance,* 143 F.3d at 703. In fact, mere medical malpractice is not enough to prove deliberate indifference. *See Estelle,* 429 U.S. at 107, 97 S.Ct. 285. It "is well established that mere disagreement over . . . proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth

Amendment violation." *Chance,* 143 F.3d at 703. Therefore, no reasonable jury could conclude that defendants were deliberately indifferent to plaintiff's podiatric problems.

### B. *Plaintiff's Tinnitis*

Plaintiff alleges that he suffers from tinnitus, a ringing in the ears, which he alleges causes him extreme pain. *See* Pl's Mem at 13. In support of his contention that tinnitus is a "sufficiently serious" condition under the Eighth Amendment, plaintiff offers the testimony of Dr. Jack Vernon, who has studied tinnitus for over 30 years, taught Otolaryngology at Princeton University and the University of Virginia, and founded the Oregon Hearing Research Center. *See* Declaration of Dr. Jack A. Vernon, sworn to on January 30, 1999 [hereinafter "Vernon Dec."] at ¶ 1 and Ex.2. Although Dr. Vernon concedes that "tinnitus ranges in severity, from mild to extreme," *id.* at ¶ 4, and that he has never met, examined, or spoken with plaintiff, *see* Deposition of Dr. Jack Vernon, April 9, 1998 [hereinafter, "Vernon Dep."] at 129, he asserts that "unrelenting tinnitus can be extremely excruciating." Vernon Dec. at ¶ 4. However, Dr. Vernon concedes that tinnitus is "not life-threatening [or] degenerative" and does not cause "extreme pain." Vernon Dep. at 124. In fact, Dr. Vernon admits that tinnitus "does not produce pain" at all. *Id.* This evidence would not allow a reasonable jury to find that tinnitus is a serious medical need under the Eighth Amendment; therefore, plaintiff's claim that defendants failed to adequately treat his tinnitus is not actionable.

Even if tinnitus were a serious medical need, the record shows that defendants have not been deliberately indifferent to that need. Plaintiff has had multiple medical evaluations regarding his

tinnitus,[5] and defendants have attempted to treat his tinnitus with Niacin and Prozac,[6] a masking device,[7] and ear plugs.[8] Plaintiff's complaints that he has not been tested in the proper manner, that he has not been tested a sufficient number of times, that he has not been housed in a quieter cell,[9] and that he has not been treated with drugs of his choice,[10] are simply complaints regarding the type of treatment that plaintiff received; such complaints are not actionable under the

5. Plaintiff received medical consultations regarding the treatment of his tinnitus on at least the following dates: on April 1, 1977, September 23, 1980, July 28, 1981, August 17, 1983, November 24, 1986, October 15, 1991, January 7, 1992, February 18, 1992, June 2, 1994, September 7, 1994, October 14, 1994, October 27, 1994, May 22, 1996, August 11, 1997, see Lewin Aff. ¶ 5[b], [f], [j], [o], [r], [t], [u], [ah], [al], [av], [aw], [da], [dt], April 6, 1998, June 16, 2000, July 26, 2000, August 8, 2000, see Affidavit of Dr. Uday K. Desai, sworn to on June 13, 2001 [hereinafter, "Desai Aff."] at ¶ 10 and Exs. A, B, and G, and October 5, 1999, see Affidavit of Dr. Cheng Yin, sworn to on June 13, 2001, at ¶ 7.

6. Dr. Graceffo attempted to treat plaintiff's tinnitus with Niacin, which is a non-alcohol form of Nicotex, a drug that was prescribed by Dr. Michael Olds, an outside consultant. Dr. Graceffo treated plaintiff with Niacin, rather than Nicotex because prison policy prohibits alcohol-based prescription drugs from being prescribed to inmates. See Graceffo Aff. at ¶ 8. Dr. Graceffo also prescribed Prozac, but plaintiff refused to take it out of concern for possible side effects. See id.

7. Plaintiff's medical records indicate that even though the DOCS medical staff did not believe that a masking device would be a beneficial treatment for plaintiff's tinnitus, plaintiff was treated with masking devices, upon his insistence, at least twice. See Lewin Aff. ¶ 5[j], [t], [al]; Pl's Dec. at Ex. 171. Plaintiff also participated in a sleep study on April 24–25, 1995, the results of which were found to be normal. See Lewin Aff., ¶ 5[bv].

8. Contrary to plaintiff's complaint that earplugs, which were prescribed for his tinnitus, were "frequently not provided," see Pl's Mem at 14, plaintiff's medical records indicate that he received earplugs on at least the following occasions: May 26, 1994, June 8, 1994, November 9, 1994, December 13, 1994, January 20, 1995, May 2, 1995, January 23, 1996, June 21, 1996, July 23, 1996, August 24, 1996, March 22, 1997, April 22, 1997, and July 23, 1997, see Lewin Aff. at 5[ae], [ai], [ay], [bc], [bj], [by], [ct], [dd], [df], [di], [dj], [dl], [ds].

9. Plaintiff complains that his transfer from "J" Block of Green Haven, which was a "quiet" cell block, to "A" Block of Green Haven, which was a "noisier" block, exacerbated his tinnitus, and constitutes deliberate indifference to his tinnitus. See Pl's Mem at 3. Again, plaintiff's tinnitus is not a serious need under the Eighth Amendment. However, even if it were, defendants were not constitutionally required to place plaintiff in a quiet cell block as treatment for his tinnitus. Defendants provided plaintiff with medicines to treat his tinnitus as well as with earplugs and masking devices to block out the noise.

10. Plaintiff's supplemental evidence regarding his tinnitus focuses on his desire to have his previous prescription for Xanax, a medication used to treat his anxiety caused by the tinnitus, re-prescribed. See Pl's Reply Mem at 8; Desai Aff. at ¶ 12–13; Pl's Supp.Dec. at ¶ 49. Dr. Desai, a DOCS doctor, prescribed Xanax for plaintiff on a trial basis for plaintiff's anxiety, but discontinued plaintiff's prescription due to plaintiff's reports of its limited efficacy and of the side-effects of the drug. See Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Leave to Submit Additional Evidence [hereinafter "Pl's Add'l Mem"] at 5; Desai Aff. at ¶ 12–13. Dr. Desai referred plaintiff to a psychiatrist to discuss further use of Xanax, but the psychiatrist chose not to prescribe the drug. See Defendants' Memorandum of Law in Response to Plaintiff's Supplemental Evidence [hereinafter, "Defs' Supp.Mem"] at 19. Plaintiff's anxiety that he experiences due to his condition is not a subject of this action, and failure to treat his anxiety is irrelevant here. Even if Xanax were a drug used to treat tinnitus itself, rather than the anxiety caused by the condition, plaintiff's disagreement with the drugs used to treat his condition can not form the basis of a showing of deliberate indifference. See *Estelle*, 429 U.S. at 105–106, 97 S.Ct. 285.

Eighth Amendment. *See, e.g., Estelle,* 429 U.S. at 105–106, 97 S.Ct. 285 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"); *Fulmore v. Mamis,* 2001 WL 417119, at *9 (S.D.N.Y. April 23, 2001) ("Mere disagreement in treatment does not amount to an Eighth Amendment violation."); *Vento v. Lord,* 1997 WL 431140, at *4 (S.D.N.Y. July 31, 1997) ("[D]isagreement with the defendants' diagnoses and dissatisfaction with the treatment of her medical condition [are] allegations which are not actionable under the Eighth Amendment.").

### C. *Plaintiff's Allergies*

 Plaintiff alleges that he has seasonal rhinitis and allergies to dust, plantain, grass, trees, and other antigens. *See* Pl's Mem at 6. Plaintiff alleges that when left untreated, these allergies cause him headaches, earaches, sinus congestion, soreness in his throat and eyes, tearing, nasal infections, and breathing problems. *See id.* However, plaintiff's allergies do not produce death, degeneration, or extreme pain; therefore, plaintiff's allergies are not, in objective terms, a serious medical need under the Eighth Amendment. *See Hathaway,* 37 F.3d at 66. *See, e.g., Smith v. Montefiore Med. Ctr.-Health Serv. Div.,* 22 F.Supp.2d 275, 281 (S.D.N.Y.1998) (cold-like symptoms resulting from asbestos inhalation not a serious medical need under the Eighth Amendment); *Doty v. County of Lassen,* 37 F.3d 540, 546 (9th Cir.1994) (nausea, shakes, and headaches not serious medical conditions under the Eighth Amendment). The state need not treat prisoners at a level that "exceeds what the average reasonable person would expect or avail [him]self of in life outside the prison walls. [*A correctional facility]* is not a health spa, but a prison in which convicted felons are incarcerated." *Dean v. Coughlin,* 804 F.2d 207, 213 (2d Cir.1986) (Emphasis added). Seasonal allergies is a common condition that does not rise to constitutional dimensions. No reasonable jury could find that plaintiff's allergies constitutes a condition that produces death, degeneration, or extreme pain; therefore, plaintiff's Eighth Amendment claim based upon failure adequately to treat his allergies is not actionable.

 Even if plaintiff's allergies did constitute a serious medical need, defendants have not been deliberately indifferent to that need. Plaintiff argues that defendants' failure to continue his desensitization shots constitutes deliberate indifference to his allergies. *See* Pl's Mem at 7. However, defendants treated plaintiff's allergies with allergy medications, including Seldane, Vancenase nasal spray, Sudafed, and Allegra. *See* Lewin Aff. at 3[av], [ay], [az], [be], [bg], [bj], [bk], [bp], [bu], [cg], [ci], [cj], [cu], and [cv]. Plaintiff's complaints merely address the type of treatment he has received, and such complaints are not actionable under the Eighth Amendment. *See Estelle,* 429 U.S. at 105–106, 97 S.Ct. 285; *see also McCloud v. Delaney,* 677 F.Supp. 230, 232 (S.D.N.Y.1988) ("[T]here is no right to the medical treatment of one's choice if the prescribed treatment is based on applicable medical standards."); *Mabery v. Wong,* 1997 WL 86320, at *3 (N.D.N.Y. Feb.28, 1997) (holding that denial of preferred allergy medication is not an actionable "deprivation" under the Eighth Amendment).

 Plaintiff also claims that his exposure to second-hand smoke in the correctional facilities amounts to cruel and unusual punishment, because the other prisoners' smoke aggravates his allergies.

*See* Pl's Mem at 8. Plaintiff failed to alert the Court in his papers that in 1998, the Northern District of New York dismissed his claim that his exposure to second-hand smoke while housed in the Attica and Clinton correctional facilities amounted to cruel and unusual punishment. *See Davidson v. Coughlin,* 920 F.Supp. 305 (N.D.N.Y. 1996).[11] In affirming the district court's decision, the Second Circuit held that the prison officials were entitled to qualified immunity because "it is far from settled that placing a prisoner such as Davidson, who did not share a cell, in an environment in which ambient tobacco smoke is present would constitute a violation of the Eight Amendment." *Davidson v. Coughlin,* 141 F.3d 1151, 1998 WL 88131, at *3 (2d Cir. 1998). For the same reason, defendants here are entitled to qualified immunity against plaintiff's claim that exposure to second-hand smoke violated his right to be free from cruel and unusual punishment.[12]

### D. *Plaintiff's Optical Problems*

██ Plaintiff's complaints regarding his optical problems fall into four categories. First, plaintiff claims that he has a serious medical need for contact lenses because he suffers from a "myopic astigmatism which requires thick, heavy glasses in order to correct his vision to 20/20," but he has "a nasal bone deformity," a spicula of bone caused by having his nose broken twice, that causes him "severe pain when he wears glasses." Pl's Mem at 9. If plaintiff's need for vision correction were a

sufficiently serious need, and plaintiff's pain in the bridge of his nose were also a sufficiently serious need, then the Court would assume that plaintiff's need for vision correction that does not cause him pain is also a sufficiently serious need. Where a prisoner's vision will degenerate in the absence of corrective glasses, the need for vision correction can be a sufficiently serious need. *See Koehl,* 85 F.3d at 87 (need for corrective eyewear was a sufficiently serious medical need where the deprivation of glasses caused the plaintiff's left eye to shift "fully into the corner of the socket [rendering the plaintiff] almost sightless."). Plaintiff asserts that his vision deteriorates without correct prescription eye-wear. *See* Pl's Supp.Dec. at ¶ 46.

██ However, even if the Court assumed that plaintiff's vision deteriorates without correctly prescribed eye-wear, plaintiff's need for contact lenses would not be sufficiently serious, because the pain in the bridge of his nose when he wears eyeglasses is not a sufficiently serious medical need. In support of his claim that he experiences severe pain in the bridge of his nose when he wears glasses, plaintiff submits the testimony of Dr. Paul Metz. *See* Declaration of Dr. Paul Metz, sworn to on May 13, 1998 [hereinafter, "Metz Dec."]. Dr. Metz states that the amount of pain any one person experiences is "subjective," and that he is "not in a position to opine as to whether Mr.

---

**11.** It is axiomatic that a party "is obligated to disclose rulings by the Federal Court of Appeals in the same circuit in which his ... case is pending 'that are directly adverse to any important or disputed proposition of law on which he explicitly relies.'" *Ethics Opinion Sets Guideline for Disclosing Adverse Rulings,* NYLJ Dec. 18, 1980, p. 1, cols 2 & 3 (discussing Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York, opinion No. 80–4); *see also Hendrix v. Page,* 986 F.2d 195, 200–01 (7th

Cir.1993) (citing Model Rules of Conduct Rule 3.3(a)(3)).

**12.** In any event, effective July 1, 1999, DOCS began phasing in a facility-wide no-smoking policy. Pursuant to that policy, as of January 1, 2001, indoor smoking is prohibited in all DOCS facilities. *See* Defs' Reply Mem at 4, n. 2. Therefore, plaintiff's claim for injunctive relief regarding second-hand smoke is moot.

Davidson's wearing of glasses causes him extreme pain," but that "[i]t would not be impossible, or even improbable, for a person to experience what they might describe as 'extreme pain' in the bridge of the nose while wearing glasses." *Id.* at ¶ 5–6. However, the serious medical need standard is not a subjective standard. *See Chance,* 143 F.3d at 702. Rather, the standard is objective and "contemplates a condition of urgency that may result in degeneration or extreme pain ." *Id.* (internal quote omitted). The Eighth Amendment "embodies ... concepts of dignity, civilized standards, humanity, and decency. ... [R]epugnant to the Eighth Amendment [are] punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102, 97 S.Ct. 285. Plaintiff's discomfort in the bridge of his nose when he wears eyeglasses simply is not serious enough to violate the standards of decency that mark our society and is not a serious medical need under the Eighth Amendment. *Cf. Veloz,* 35 F.Supp.2d at 312 (months of alleged "severe pain" after injury to great toe and pain from degenerative arthritis in ankle was "far less serious than the types of conditions the other cases illustrate qualify as serious medical needs."); *Chatin v. Artuz,* 1999 WL 587885, at *3 (S.D.N.Y. August 4, 1999) (holding that while plaintiff's constant pain "may be very real" from his bone spur, tendinitis, and swollen foot, the pain is not "of the type contemplated for satisfaction of the objective standard"); *Cole,* 1995 WL 231250, at *5 (pain associated with failure to prescribe orthopedic shoes and dressing that was too tight after bunion surgery not sufficiently serious under the Eighth Amendment). Because the discomfort plaintiff experiences in his nose when he wears glasses is not a sufficiently serious condition, the Court need not determine whether defendants were deliberately indifferent to plaintiff's need for contact lenses.[13]

■ Second, plaintiff claims that in January of 1994, when he was provided with contact lenses, defendants "provided an inadequate supply of proper lens cleaners, disinfectants and eye lubricants," and that "the unmonitored use of his lenses caused Mr. Davidson an eye infection, discomfort, cloudy vision, irritation, and less than sharp acuity." Pl's Mem at 10. This condition is not one of degeneration or extreme pain and is not sufficiently serious to constitute cruel and unusual punishment. *See, e.g., Montefiore Med.,* 22 F.Supp.2d at 281 (cold-like symptoms resulting from asbestos inhalation not a serious medical need under the Eighth Amendment); *Doty,* 37 F.3d at 546 (nausea, shakes, and headaches not serious medical conditions under the Eighth Amendment). Therefore, the Court need not inquire into whether defendants were deliberately indifferent to this complaint.

■ Third, plaintiff claims that defendants "frequently provide [him] eye-

---

**13.** The Court notes that plaintiff was provided with contact lenses in January of 1994, but DOCS medical personnel suspended plaintiff's contact lens use six months later when "Dr. William Tucker, an ophthalmologist retained by DOCS and employed by SUNY–HCS," after examining plaintiff, determined that the lenses were causing "corneal neovascularization." Pl's Mem at 12; *see also* Lewin Aff. at ¶ 4[ge]. Plaintiff alleges that "Dr. Graham's recommendation that [he] utilize eyeglasses was poor medical judgment." Pl's Mem at 12. However, poor medical judgment does not constitute deliberate indifference under the Eighth amendment. *See Estelle,* 429 U.S. at 106, 97 S.Ct. 285 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

glasses with incorrect prescriptions," which causes him "headaches, sinus and nasal pain, blurry vision and tearing." *See* Pl's Mem at 9; *see also* Pl's Supp.Dec. at ¶ 3 (Plaintiff alleges that his lenses "are chronically incorrectly ground by convicts at the Walkill Prison optical laboratory."). Plaintiff's blurry vision, headaches, and tearing are not conditions that produce degeneration or extreme pain and are not a sufficiently serious condition under the Eighth Amendment. *See, e.g., Montefiore Med.,* 22 F.Supp.2d at 281(cold-like symptoms resulting from asbestos inhalation not a serious medical need under the Eighth Amendment); *Doty,* 37 F.3d at 546 (nausea, shakes, and headaches not serious medical conditions under the Eighth Amendment). Even if plaintiff's need for eyeglasses with lenses ground to accurate prescriptions were a sufficiently serious need under the Eighth Amendment, defendants were not deliberately indifferent to that need. Plaintiff has had numerous consultations with prison medical staff with respect to his vision and eye conditions that he claimed resulted from his vision problems.[14] Even if plaintiff establishes that defendants have been incompetent in

the filling of his eyeglass prescriptions, medical malpractice does not establish deliberate indifference under the Eighth Amendment. *See Estelle,* 429 U.S. at 106, 97 S.Ct. 285.

Fourth, plaintiff claims that on April 12, 2000, "[u]pon receipt by the Elmira Correctional Facility, [his] glasses were inexplicably confiscated by Sgt. Barbara Charles, who sent [them] to Superintendent Floyd Bennett." Pl's Supp.Dec. at ¶ 38. Plaintiff alleges that this resulted in a two month delay in plaintiff's receipt of his glasses. Pl's Supp.Dec. at ¶ 39–40. None of the persons involved in this incident are defendants in this action. Therefore, when the Court accepted this additional evidence, it ruled that the evidence would not be admissible against any of the defendants in their personal capacities and would only be relevant to plaintiff's claim for injunctive relief against the DOCS Commissioner in his official capacity. *See Davidson II,* 148 F.Supp.2d at 253–54 (personal involvement of defendants is a prerequisite to an award of damages under § 1983, but not for injunctive relief; therefore, plaintiff's new evidence only relevant

---

**14.** Plaintiff's medical records reflect that he received medical consultations regarding his vision prescriptions and eye problems related to his vision prescriptions on at least the following occasions: July 1, 1976, July 5, 1977, April 4, 1978, January 24, 1979, June 5, 1979, February 11, 1980, July 15, 1980, January 11, 1982, December 3, 1982, February 15, 1983, May 9, 1983, June 15, 1984, April 11, 1985, August 19, 1985, September 27, 1985, October 18, 1985, November 8, 1985, December 17, 1985, January 15, 1986, March 19, 1986, April 16, 1986, May 21, 1986, July 2, 1986, September 3, 1986, September 8, 1986, September 24, 1986, November 24, 1986, January 14, 1987, October 9, 1987, November 5, 1987, February 10, 1988, March 2, 1988, March 3, 1988, June 23, 1988, November 29, 1988, December 15, 1989, January 29, 1990, May 16, 1990, December 27, 1991, March 6, 1992, May 13, 1993, July 16, 1993, November

30, 1993, June 3, 1994, June 16, 1994, August 11, 1994, November 22, 1994, March 2, 1995, September 25, 1995, June 21, 1996, *see* Lewin Aff. at ¶ 4[a]-[mj], August 17, 1998, October 15, 1998, December 15, 1998, March 29, 1999, April 7, 1999, and August 5, 1999, *see* Siller Aff. at Exs. J, N–R.

Plaintiff's medical records further reflect that he received new eyeglasses or contacts on at least the following occasions: August 20, 1984, September 19, 1985, October 21, 1985, February 12, 1986, March 12, 1986, June 18, 1986, October 22, 1986, July 8, 1987, March 5, 1988, June 11, 1988, March 30, 1989, June 7, 1989, April 11, 1990, May 14, 1991 (plaintiff disputes that he received glasses on this date), February 22, 1992, December 21, 1993, January 25, 1994, October 5, 1994, February 1, 1995, June 14, 1995, June 21, 1996, and August 23, 1996. *See* Lewin Aff. at ¶ 4[a]-[mj].

to Davidson's claim for injunctive relief against the DOCS Commissioner). However, plaintiff admits that when he filed a grievance regarding this confiscation on May 2, 2000, that grievance was "unanimously accepted in part," and that he received his glasses within two months of the alleged confiscation. Pl's Supp.Dec. at ¶ 39–40. Therefore, plaintiff's claim for injunctive relief regarding this incident is moot.

In short, plaintiff does not suffer from a serious medical need to which defendants have been deliberately indifferent. Therefore, none of plaintiff's Eighth Amendment claims has merit.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is hereby GRANTED and plaintiff's claims are DISMISSED with prejudice.

**SO ORDERED.**