

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-16-2007

# Foreman v. Bur Prisons

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1274

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"Foreman v. Bur Prisons" (2007). *2007 Decisions*. Paper 1769.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1769

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1274

ORLANDO C. FOREMAN,
Appellant

v.

BUREAU OF PRISONS; HARLEY G. LAPPIN;
JONATHAN C. MINER; KARL BELFONTI;
RUBEN MORALES; EDIBERTO MEDINA;
HERBERT INGRAM; TONY JONES, and;
PAT KITKA, ARE ALL SUED IN THEIR
INDIVIDUAL AND OFFICIAL CAPACITIES;
FEDERAL CORRECTIONAL INSTITUTION,
FAIRTON, NEW JERSEY

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 04-cv-05413)
District Judge: Honorable Robert B. Kugler

Argued December 5, 2006

Before: RENDELL and AMBRO, <u>Circuit</u> <u>Judges</u>
and BAYLSON*, <u>District</u> <u>Judge</u>.

(Filed January 16, 2007)

_____

* Honorable Michael M. Baylson, District Court Judge for the Eastern District of
Pennsylvania, sitting by designation.

Christine P. O'Hearn
Stephen C. Higgins
Henry Oh    **[ARGUED]**
Brown & Connery
360 Haddon Avenue
Westmont, NJ  08108
  *Counsel for Appellant*

Daniel J. Gibbons   **[ARGUED]**
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ  07102
  *Counsel for Appellees*

---

OPINION OF THE COURT

---

BAYLSON, *District Judge*.

Plaintiff-Appellant Orlando Foreman ("Foreman"), appeals from the District Court's grant of summary judgment in favor of Defendants-Appellees, several employees of the Bureau of Prisons ("BOP") and the BOP itself, on claims brought pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA). Foreman v. Bureau of Prisons et al., No. 04-5413, 2005 WL 3500807 (D.N.J. Dec. 20, 2005).  Foreman contends that the District Court erred in finding that the individual defendants are entitled to qualified immunity on the § 1983 claims.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

2

## I.     Factual Background

During his arrest leading to his conviction and imprisonment, Foreman received a gunshot wound which rendered him a T-5 paraplegic. He is now serving a 235 month prison sentence in the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"). In November 2004, he filed a complaint in the District of New Jersey against the BOP, the Federal Correctional Institution, and several prison officials. Foreman alleged that the prison and its employees violated: (1) § 1983 by subjecting him to cruel and unusual punishment; and (2) the ADA by denying him necessary medical items. Specifically, Foreman claimed that the prison unlawfully failed to provide him with the appropriate shower chair for a T-5 paraplegic and proper medical shoes.

### A.     The Shower Chair

In the fall of 2000, a few months after being transferred to FCI Fairton, Foreman verbally requested a shower chair designed for T-5 paraplegics from the Hospital Administrator and Correctional Unit Counselor. According to Foreman, the proper shower chair for a T-5 paraplegic is a roll-in chair with a padded surface, two arm supports to enable him to balance and shift his weight, and an opening in the center for drainage and hygiene. The prison provided Foreman with a shower chair in October 2000, but he claimed it was inadequate because it did not have lateral supports or a center opening. Foreman's repeated verbal requests for a different chair were denied. Fearing that he would fall out of the chair provided by the prison, Foreman began using his personal wheelchair in the shower.

3

On March 21, 2004, Foreman initiated the administrative remedy process by filing a BP-8 "Informal Resolution Form" requesting a different shower chair. Although his unit counselor provided him with a shower chair the next week, Foreman claimed it was not the proper chair for a T-5 paraplegic because it did not have lateral supports. The prison contended that lateral supports were unnecessary because the shower itself had railings which Foreman could use to balance himself while washing. Foreman continued to file administrative appeals, arguing that the handrails bolted to the shower walls did not enable him to secure himself safely in the chair. On September 20, 2004, in response to his final appeal, the prison's Central Office told Foreman that the prison staff was in the process of obtaining a more appropriate chair for him. Foreman claims he has yet to receive a new chair, and it appears from oral argument that this is still the case.

As a result of using his personal wheelchair in the shower, Foreman allegedly has suffered soreness and skin irritations on his hips and buttocks, and the frame of his wheelchair has become rusted and corroded, posing a serious risk to his safety. Moreover, in December 2004, while showering with the chair provided by FCI Fairton, Foreman slid out of it and fell onto the shower floor. His medical records indicate that he suffered only minor scratches from the fall, and the parties dispute whether he ever sought treatment at Health Services following the accident.

B.    The Shoes

Because Foreman is permanently confined to a wheelchair, he has experienced a number of problems with his feet, including soft tissue damage, blisters, and decubiti on both heels.  In light of these problems, the prison gave him permission to buy high-top sneakers from the commissary in April 2001 and March 2003.  The medical staff also authorized Foreman to receive shoes from an outside source.  His medical records indicate that after receiving permission to purchase high-tops in April 2001, he reported foot problems on three occasions.[1]

In March 2004, Foreman filed an informal complaint, claiming that he had been authorized to obtain shoes from his mother, but was later informed that he would not be allowed to receive them.  In response to Foreman's complaint, the Associate Warden explained that the prison had recently changed its procedures for packages entering the institution, and FCI Fairton would obtain the proper shoes for him.  When this did not occur, in June 2004, Foreman purchased a pair of high-tops from the prison commissary.

---

[1] On July 11, 2001, during a routine clinical visit, Foreman reported that he was experiencing pain in one of his toes because of pressure from his shoes.  A physician examined the foot and noted that there was a light scar over the toe but no tenderness, redness, or swelling.  On December 13, 2002, the physician noted that Foreman had a blister with soft tissue on his left foot.  He was not sure if Foreman's sneakers fit him properly, and recommended that he obtain hard or soft protective footwear that would keep his feet warm without applying pressure.  The doctor also suggested that heel protectors should be used at night to prevent decubiti.  He believed that lotion and Vaseline would suffice to treat the blister as long as the skin remained closed, but the blister should be carefully monitored.  Finally, on October 17, 2003, while being examined for a urinary tract infection, Foreman reported a small, round wound over his left heel. The doctor treated it with oral medication and an antibiotic ointment.

Foreman now contends that Health Services failed to provide him with the proper medical shoes, and the lack of protective footwear has caused serious injury to his feet, which could lead to severe decubiti. Defendants contend that Foreman has not exhausted his administrative remedies for this claim.

## II.    District Court Opinion

The District Court held the following:

A.    The individual defendants are entitled to qualified immunity on the § 1983 claim relating to the shower chair and shoes. The alleged facts, taken in the light most favorable to Foreman, do not demonstrate a constitutional violation. 2005 WL 3500807 at *7, 9. Although Foreman's shower chair did not have lateral supports or a center opening, the shower area itself had railings and a padded shower seat. The District Judge relied on case law dealing with similar factual situations from other circuits and district courts.[2]

---

[2]Procedurally, Defendants initially filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), but then supplemented the record with various documents and a sworn declaration. In response, Foreman submitted numerous exhibits. Accordingly, the District Judge treated the pending motion as one for summary judgment. Although Foreman contends that the District Judge erred in refusing to delay disposition of the motion for taking discovery, Foreman, represented by counsel, failed to file a Rule 56(f) affidavit or otherwise indicate that he desired to take discovery before the court ruled on the pending motion. Under Pastore v. Bell Telephone Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994), and Bradley v. United States, 299 F.3d 197, 206-07 (3d Cir. 2002), the District Court did not err in proceeding to grant summary judgment. Furthermore, Foreman did not raise the discovery issue in his brief, but only mentioned it at oral argument. Under our case law, we conclude that the failure to grant discovery was not error by the District Court, and in any event the issue was not properly raised on appeal. See  Nagle v. Alspach, 8 F.3d 141, 143 (3d Cir. 1993); United States v. Quillen, 335 F.3d

Even if the facts amounted to a constitutional violation, the District Judge held that reasonable officials could disagree over the lawfulness of Defendants' conduct. Id. at *8. There is no clearly settled law establishing that a paraplegic inmate is entitled to the shower chair of his choice, or one with a center opening and lateral supports. Id. A reasonable official could conclude that an inmate could balance himself using the railings on the shower walls for support. Id.

As to the shoes, the District Judge found that Foreman did not show that the alleged denial of appropriate footwear caused him any harm. Id. at *9. Moreover, the record indicated that Defendants were responsive to Foreman's foot condition, and permitted him to buy new shoes from the commissary. Id. Disagreement over the proper treatment does not amount to a constitutional violation. Id. Because the District Court disposed of the shoe claim on qualified immunity grounds, it did not address Foreman's failure to exhaust his administrative remedies.

B.    Sovereign immunity prevents Foreman from maintaining an action under Bivens[3] for civil damages against the institutional defendants - Bureau of Prisons and FCI Fairton. Id. at *10.

C.    Foreman's ADA claim fails because it does not apply to the federal

---

219, 224 (3d Cir. 2003); Fed. R. App. P. 28(a)(9).

[3]Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) permits individuals to sue federal officers for damages for violations of certain constitutional rights.

government, its agencies, or employees. Id. Moreover, Foreman did not allege

discrimination based on a disability in his complaint. Id. at *11.

## III. Legal Standards

### A. Qualified Immunity

The qualified immunity analysis is a two-step inquiry. First, the court must

determine whether the alleged facts, viewed in the light most favorable to the party

asserting the injury, constitute a constitutional violation. Saucier v. Katz, 533 U.S. 194,

201 (2001). If so, the court must determine whether the right violated was "clearly

established" in light of the specific context of the case. Id. A right is clearly established

if it would be clear to a reasonable officer that his conduct was unlawful in the situation

he confronted. Id. at 202. In sum, qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335,

335 (1986).

### B. Deliberate Indifference Under the Eighth Amendment

Foreman contends that Defendants violated his Eighth Amendment right against

cruel and unusual punishment by failing to provide him with the appropriate shower chair

and shoes. Thus, in deciding if the individual defendants are entitled to qualified

immunity, this Court must determine whether they acted with deliberate indifference to

Foreman's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The

deliberate indifference analysis is a two-part inquiry with an objective and subjective

component. First, the plaintiff must demonstrate that the alleged deprivation of medical

8

treatment or the result of such deprivation was objectively serious. <u>Wilson v. Seiter</u>, 501

U.S. 294, 298 (1991). Second, the plaintiff must establish that defendants possessed a

sufficiently culpable state of mind. <u>Id.</u> The prison officials must have

<u>knowingly</u> disregarded an excessive risk to the inmate's health or safety. <u>Farmer v.

Brennan</u>, 511 U.S. 825, 837 (1994). They must be "aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and [they] must

also draw the inference." <u>Id.</u> Mere negligence does not suffice. <u>Gamble</u>, 429 U.S. at 106.

Likewise, an inmate's disagreement with prison personnel over the exercise of medical

judgment does not amount to an Eighth Amendment violation. <u>Young v. Quinlan</u>, 960

F.2d 351, 358 n.18 (3d Cir. 1992) (superseded by statute on other grounds).

**IV.    Analysis**

Foreman has failed to cite, and we have not found, any reported case that supports

his contention that deprivation of a specific shower chair is a violation of the Eighth

Amendment or any other constitutional provision.

The leading circuit court decision on this point is <u>Shockley v. Jones</u>, 823 F.2d

1068 (7th Cir. 1987). In that case, Shockley, a paraplegic inmate, requested a shower

chair in September 1981, and the prison provided him one later that month. Before

receiving the chair, Shockley fell twice and broke the skin on his left buttock. The injury

developed into a neurogenic ulcer which, because it was not properly cared for, required

several surgical procedures. The Seventh Circuit found there was no constitutional

violation even though Shockley suffered "serious injury." <u>Id.</u> at 1072. In his complaint,

9

Shockley failed to allege deliberate indifference, claiming only that the defendants refused to provide him with needed supplies. The court would not imply deliberate indifference on the facts of the case. The officials' delay in providing Shockley with a shower chair may or may not have been negligent, but the court found it certainly was not deliberately indifferent.

Foreman distinguishes Shockley by pointing out that the inmate eventually received a shower chair. This distinction is immaterial because Foreman has received a shower chair from the prison; it is just not the specific type that Foreman believes is appropriate for a T-5 paraplegic. Furthermore, the court in Shockley declined to find a constitutional violation even though the inmate suffered "serious injury." In this case, the medical records indicate that Foreman has received only "minor scratches."

Following Shockley, the Eastern District of Virginia considered a quadriplegic prisoner's claim that he was subjected to cruel and unusual punishment because, among other things, he was not provided with an appropriate shower chair. Staples v. Va. Dept. of Corrections, 904 F.Supp. 487 (E.D. Va. 1995). The court declined to find a constitutional violation, noting that Staples had a wheelchair other than his personal one for showering. Additionally, Staples failed to show that he suffered any serious harm. Foreman distinguishes Staples by arguing that he, unlike Staples, must use his personal wheelchair to shower. This distinction is unpersuasive because FCI Fairton has not forced Foreman to use his personal wheelchair in the shower. Rather, Foreman chooses to use his personal wheelchair because he believes it is safer than the shower chair he was

10

provided, padded bench, and wall railings.  Moreover, Foreman has not alleged "serious harm."  He fell out of his chair once and received only minor scratches.  The other harm he alleges is future harm which he speculates will result from continued use of his wheelchair in the shower.

Although not cited by Foreman, there are a few cases where the failure to provide a shower chair to a disabled inmate was found to be a constitutional violation.  However, the conditions in those cases were significantly worse than those faced by Foreman.  See Schmidt v. Odell, 64 F.Supp. 2d 1014, 1031 (D.Kan. 1999) (Schmidt, a double amputee, was denied a shower chair for 6-7 months, despite his doctor's request that the prison provide him with one.  He was forced to crawl on the shower floor and/or stand on his knees, which was extremely painful.  As a result, he developed a rash on his buttocks (which lasted for several months) and a cellulitis infection.  The court found that the delay in providing a shower chair resulted in the "unnecessary infliction of pain ... and a needless indignity that a jury could find was inconsistent with the Eighth Amendment"); Bradley v. Puckett, 157 F.3d 1022 (5th Cir. 1998) (Bradley, a disabled inmate who wears a leg brace, was not provided with a shower chair for over two months.  During that time period he used the toilet water in his cell to bathe, which resulted in a fungal infection and blisters.  The Fifth Circuit found that the district court erred in dismissing Bradley's complaint because the alleged facts, if proven, may warrant relief under the Eighth Amendment).

We agree with the District Judge that there was no constitutional violation here.

11

However, even if there were, there is no clearly settled case law concluding that Foreman suffered a deprivation of a constitutional right under these circumstances.

Moreover, the non-medical prison officials - Lappin, Miner, Belefonti, Ingram, Jones, and Kitka - are entitled to qualified immunity because Foreman was under the care of medical professionals - Morales and Medina. (Id. at 12-13). See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.").

Regarding the shoes, because there is no evidence that the shoes have caused Foreman any physical harm, his complaint simply amounts to a request for a different type of shoe. Appellant has cited no case law in support of the proposition that a prisoner is entitled to wear the shoes of his choice. Ultimately, Foreman disagrees with the prison's choice of treatment for his podiatric problems. This does not rise to the level of a constitutional violation. See, e.g., Davidson v. Scully, 155 F.Supp.2d 77 (S.D.N.Y. 2001) (declining to find an Eighth Amendment violation where inmate received extensive treatment for his podiatric problems but alleged that the prison did not properly treat him because it denied him particular orthopedic shoes, orthotics, and surgery).

## V.     Conclusion

For the reasons stated above, we will AFFIRM the Order of the District Court.